**CULVER, Plaintiff-Appellee, v. CULVER, Jr., et, Defendants-Appellants.**

Ohio Appeals, Tenth District, Franklin County.

No. 6320.   Decided April 5, 1960.

Herbert, Tuttle, Applegate & Britt, James C. Britt, of Counsel, Columbus, for plaintiff-appellee.

John J. Chester, Jr., Clayton W. Rose, Jr., Columbus, for defendants-appellants.

(MATTHEWS, PJ, O'CONNELL and LONG, JJ, of the First District, sitting by designation in the Tenth District.)

494

**OPINION**

By LONG, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas, Division of Domestic Relations, of Franklin County, Ohio.

As briefly as we can set out the facts which give rise to the questions presented by this appeal, it appears that the appellant, Knight K. Culver, Jr., did, on the 15th day of May, 1954, transfer certain securities of the approximate value of $50,000.00 to The Ohio National Bank, to be held in trust for the purposes set forth in the agreement. In Article II of the Trust Agreement, we find this language: * "The entire net income derived from such Trust Fund shall be paid in monthly or other convenient installments to or for the benefit of the grantor so long as he shall live." The Culvers had four heirs or children, and apparently for the protection of his children, the settlor also provided in the Trust Agreement as follows: "Upon the death of Betty Culver, or upon the death of the grantor, if she predeceases him, the Trustee shall continue to hold and administer this trust for the benefit of the children of the grantor, pay to, or for the benefit of the children of the grantor, and the issue of any deceased child of the grantor such parts of the income and **such parts of the principal as it deems advisable in its absolute and uncontrolled discretion** for their health, maintenance, support and education, including college, university or equivalent training until the trust is terminated."

Thereafter, marital difficulties developed between appellee and appellant, resulting in a separation agreement and a subsequent divorce, wherein the separation agreement was made a part of the decree for divorce. Subsequently the amount of weekly support was, by order of the court, reduced to $60.00 per week. This order was made on November 14, 1956, and ever since that date the appellant has been in arrears on his support payments. On January 14, 1957, The Ohio National Bank was made a party defendant in the divorce proceedings, and on said date the trial court ordered The Ohio National Bank to pay into the cashier's office of the court all sums of money payable to Knight Culver, as income, under the trust agreement, to be applied on the arrearages.

On August 9, 1957, the June 14th order was modified by agreement of the parties, so that the Bank agreed and was ordered to pay to The Buckeye Savings Company the monthly payments due on its mortgage on the home of the parties, amounting to $89.00 per month; the balance of income from the trust in amount of approximately $75.00 per month was ordered to be paid to appellee, Mrs. Culver. On July 22, 1959, appellee made a motion to reduce the total arrearages of support to final judgment. The income being exhausted, the only source of payment of the arrearages, amounting to $4,061.50, would be from the corpus of the trust. On August 13, 1959, the court sustained appellee's motion and rendered judgment against appellant and ordered the Bank to pay the judgment out of the corpus of the trust. On August 20, 1959, appellee made a motion to have the court determine that an emergency, as

allegedly defined in the trust agreement existed, as to support, welfare and care of the children, and ordering the Bank to pay the $4,061.50 to appellee. On the following day the appellant Bank filed a motion requesting the court to reconsider its former order of August 13. On September 15, 1959, a hearing was had, and the evidence contained in the bill of exceptions, was offered for the purpose of showing the existence of such emergency so far as the children were concerned. The court held that under the language of the trust, an emergency existed, and ordered the Bank to pay appellee the $4,061.50 from the corpus of the trust. It is from this order of the trial court that the appeal to this court is made.

First of all, we think it is necessary to determine the intention of the settlor in the creation of this trust; incidentally, it provides income for himself, but the real and primary purpose so far as the corpus of the trust is concerned, is for the benefit of his children, or their issue; this is clearly indicated by Article 4, as above quoted. The termination of the trust occurs when both Culver and his wife are deceased, at which time the corpus or remainder thereof is payable to the children, or their issue.

The sole issue in this case as we see it is, whether or not there is anything in the language of the trust agreement permitting the invasion of the trust corpus, resulting from settlor's permitting arrearages to pile up for lack of payments for support.

Article 2 of the trust agreement provides as follows: "In addition to such income, the trustee is authorized, **in its absolute and uncontrolled discretion,** to pay to or for the benefit of the Grantor during his lifetime, parts of the principal of this trust, from time to time in the event of an **emergency effecting him, his wife or children.**" We think that this language creates a discretionary trust in the bank. The settlor could have averted what has happened here by making his wife the trustee; he could have left it to her sole discretion to determine when an emergency existed. But he didn't do that. He foresaw that conditions might arise creating emergencies concerning which persons might differ. He desired that The Ohio National Bank be given the "absolute and uncontrolled discretion" to determine the existence of an emergency. It is claimed that the agreement of the Bank to pay some $1500.00 worth of the then existing obligations of the parties, made the Bank a party to the separation agreement, and that having exercised its discretion in that regard, failure of Culver to make support payments, constitutes an emergency and binds the Bank to pay arrearages out of the corpus of the trust, if there be no income. With this contention, we can not agree. It is true, and we are not unmindful of the fact that failure upon Culver's part to pay for support of his children creates undesirable conditions, but we think, in trusts of this kind, deviations from the terms of the trust may not be made because of desire, convenience, or even desperate conditions in the affairs of the beneficiaries, **Savings Bank v. Alter, 103 Oh St 188.** In Hopkins, v. Cleveland Trust Co., 163 Oh St 539, in the first paragraph of the syllabus we find this language: "So long as a trustee executes the trust in good faith and within the limits of a sound discretion, a court of equity will not interfere with that discre-

tion or undertake to substitute its discretion therefor." See, also: Restatement of Trusts, Section 187.

As we read the trust agreement, the Bank has the right to not only determine whether an emergency exists, but it has the obligation to determine how much money should be paid out of principal to alleviate the emergency. The settlor had a right and probably a purpose in appointing the Bank in preference to his wife or any other individual, who might be moved by sentiment or lack of vision. We think that the law is well settled that in a discretionary trust, as we have here, so long as the trustee executes the trust in good faith, and within the limits of sound discretion, a court of equity has no right to interfere with the exercise of that discretion, and substitute its discretion for that of the trustee. ˜ Even if the court would, in the exercise of a sound discretion, find that an emergency exists, under certain circumstances, it could not substitute its discretion for that of the trustee. ·Of course the courts have supervision over discretionary trusts; but the sole inquiry is limited to whether the discretion exercised by the trustee has been abused; if the bank in the exercise of good faith, failed to exercise its discretion, or, having exercised it, was guilty of bad faith, then the courts can interfere, but not before.

Let us look at the record in this case. The only testimony in the Bill of Exceptions is that of Mrs. Culver; it is upon her testimony alone and the trust agreement that we must decide the issues in this case. There is nothing in the testimony to indicate that the arrearage of $4,061.50 in and of itself created an emergency. Appellee testified on September 15, 1959, as to the necessity of repairs to the home; and generally as to various debts she owed, and that how she had borrowed money, and that her credit was exhausted; but the order finding an emergency to exist was made by the court on November 4, 1959. This order must be based on the testimony offered on September 15, 1959. The trial Court in its entry finds that the $4,061.50, arrearages were due on July 16, 1959. How can Mrs. Culver's distress on the 15th of September, 1959, be considered an emergency calling for the payment of arrearages which were payable two months before? If what the trial court said is true, then an emergency existed each time an additional $60.00 was due. We can not follow this reasoning. The testimony further discloses that when Mrs. Culver called to the attention of Mr. Rugg, Trust Officer of the Bank, that her home was in need of repairs, he sent Mr. Hamilton out to investigate and apparently $1,800.00 worth of repairs were made by the Bank in the exercise of its discretion. There is not one syllable of testimony in the record that Mrs. Culver called the Bank's attention to the fact that her husband was in arrears in support payments; that she claimed, as a result thereof, an emergency existed, or that the Bank refused to exercise a discretion thereon, or that its failure amounts to an abuse of discretion, or exercise of bad faith. What happened was that on August 13, 1959, she obtained a judgment for the full amount of the arrearages of $4,061.50, without giving the Bank an opportunity of exercising its discretion; the trial court substituted its discretion for that of the Bank, declared an emergency to exist because of the arrearages and ordered the Bank to invade

the corpus of the trust. This it can not do; nor do we agree that the settlor still has an interest in the corpus of the trust estate which his children can reach. It was at this time that the Bank refused to pay on the order of the trial court; but it did file a motion for a reconsideration of the ruling on which this appeal is predicated. We think the Bank was justified in its refusal.

In the case at bar, although the trust was for the benefit of the settlor, in that the trustee, in its discretion, might pay out principal for his benefit, he has no vested interest until the trustee exercises that discretion. In a similar case, that of Athorne v. Athorne, 100 N. H. 413 (1956) a wife attempted to reach the interest of a husband in a discretionary trust, for the purpose of alimony, and the court held this could not be done, at least until the trustee had exercised the discretion provided in the trust. See, also: Restatement of Trusts, Section 152.

In conclusion, we hold that the trust in the case at bar is a discretionary one; that the trial court was in error in ordering the Bank to pay the judgment of $4,061.50 out of the corpus of the trust estate; that the trial court substituted its discretion for that of the trustee; that the trustee has the sole and absolute discretion to determine if an emergency exists, and the amount which is to be paid to alleviate the emergency: of course, the exercise of its discretion, as to good faith or abuse of discretion, being subject always to review by a court of equity.

The orders and judgments of the trial court made on August 13, 1959, and November 4, 1959, ordering the Bank to pay the sum of $4,061.50; are hereby reversed, and the cause remanded to the Court of Common Pleas, Division of Domestic Relations, of Franklin County, Ohio, for further proceedings according to law.

MATTHEWS, PJ, concurs.
O'CONNELL, J, dissents.

## DISSENTING OPINION
By O'CONNELL, J.

There is no doubt that the Ohio National Bank, at Columbus, Ohio, under the terms of the trust entered into between it and the grantor, Knight K. Culver, Jr., on June 7, 1954, is the sole judge of whether or not it will pay, for the benefit of the grantor, funds out of the principal of the trust on account of an emergency affecting the grantor's children. This absolute discretion was given the trustee in Art. 2 of the said trust agreement.

Now discretion is from discretio (L) meaning **separation** or **difference**, so that discretion is the act of **separating** or **discerning** or **discriminating** or **judging** (Webster's New International Dictionary Unabridged 1959). In other words, by this language in the agreement. the trustee was to have full power either to make or not to make payments for the benefit of the grantor in the event of an emergency affecting his children. However, it is only reasonable to suppose that the law and the courts would have some supervision over such unlimited authority, so that there could be an intervention in case of an abuse of such power. So, in 54 Am. Jur., 180 (p. 142) it is said: "No matter how broad or absolute the dis-

cretion is, however, the general duties of a trustee to exercise good faith, reasonable care, diligence and skill require that the discretion be exercised upon judicious and reasonable consideration, subject to review by the court for an abuse of discretion."

Thus, in syllabus 3 of Albert A. Viall v. Rhode Island Hospital Trust Co., 45 R. I., 432, it is said that: "Where the purpose of testatrix was to secure an income for her son and also that he should have the trust fund if it was for his best interest to have it in the opinion and discretion of the trustee, and the will appointed a trust company as trustee, but gave the same discretion to any succeeding trustee, there was no intention to give an uncontrolled discretion to the trustee, and while the court will not substitute its judgment for that of the trustee, it will. when circumstances require, review the exercise of such a discretion and decide whether it is reasonable."

And in 54 Am. Jur., 181 (p. 143) we find this language: "It will not ordinarily substitute its discretion for that of the trustee, but upon a proper showing it may and will control or interfere with such discretion of a trustee; and, where necessary, direct a suitable allowance for support of beneficiaries, as where the trustee is about to act or has acted unreasonably or arbitrarily or from improper motives or where his refusal to act is similarly objectionable."

So, in **Frye, Trustee, Appellee, v. Burke et al, Appellants, 57 Oh Ap 99, at page 113,** the Court said that: "the discretion of trustees may without impropriety, be likened to that of judges. It is not an arbitrary discretion. It does not include the unrestrained power to do what the trustee pleases. The trustee instead of doing merely what, in his present circumstances, he chooses to do, in deference to his interests or inclination, is to do that which his honest disinterested judgment approves or ought to approve."

And in Stewart et al, Appellants, v. Madden, Appellee, 153 Penn. 445 (Syllabus 1) it was held that "when a trust created by deed of the cestui que trust for her own benefit gives discretionary power to the trustee to apply so much of the principal of the trust estate for the benefit of the cestui que trust as he shall deem necessary, the discretion of the trustee is a legal discretion which might, on presentation of a proper case be constrained for the benefit of the cestui que trust."

Likewise, in Third National Bank v. Schribner, 175 Tenn. 14 (Syllabus 12) it was said that "where provisions in will that income from trust estate in excess of an amount payable to testator's daughter should be applied under her direction for support, maintenance, and education of her children, were revoked by codicil providing that trustee should apply income necessary for such purpose, chancellor would direct suitable allowance to be made to children for their support, maintenance and education, to be altered at any time as circumstances might require if amicable arrangement could not be reached between daughter and trustee as to amount to be allowed."

So, in In re Trust will of Amanda Larkins, 243 Iowa 322 (syllabus 6) it was held that: "The court will not interfere with the trustee's determination, in the absence of clear abuse. It will not **ordinarily** substitute

its discretion for that of the trustee, but upon a proper showing may **interfere with such discretion** where the trustee acted unreasonably or arbitrarily or from improper motives." (Emphasis added.)

And, also in In Re Estate of William Tone and Mattie M. Tone, 240 Iowa 1315, it was said that "the exercise of discretion by the trustee of a spendthrift trust is subject to review by the court and to **correction** in a proper case." (Emphasis added.)

Moreover, in 90 C. J. S. 253 (p. 281) is found that "redress may be had against the trustee if he exceeds his powers, acts negligently or abuses his discretion." (See, In Re Emmons' Will, 300 N. Y. S. 580.) And in the same volume 261, at page 303, this is said: "Courts of equity have the right to exercise a supervisory control over trustees, and their **jurisdiction** is generally deemed to be exclusive, unless jurisdiction has been conferred on other courts by statute. The power exists solely for the protection of the rights of the grantor who created the trust and of the rights of the beneficiaries of the trust."

In this regard, see Sunday School Union of African Methodist Episcopal Church et al v. Walden et al, etc., 121 Fed. (2d) 719; Rollins v. Helvering, Commissioner of Internal Revenue, 92 Fed. (2d) 390, the 8th syllabus of which reads: "Discretion lodged in a trustee is rarely a permit to act arbitrarily, but is usually confined to exercise of judgment not unreasonable in the light of purposes of trust and of circumstances in which discretion is to be exercised." And, Acken v. New York Title & Mortgage Co. et al, 9 Fed. Supp., 521. Further on in the same volume 261, at page 308, there is the following: "The court, however, will interfere with the exercise of a trustee's discretion where there is shown bad faith on his part, fraud, malice, misconduct, abuse of authority, a gross and arbitrary abuse of discretion - - - or failure to exercise discretion in a reasonable manner."

So, in In Re Bricklayers' Union No. 1 of Pa. Welfare Fund, 159 Fed. Supp. 37, syllabus 8, it was held that "under Pennsylvania law, where discretion is conferred upon trustee with respect to exercise of power, its exercise is not subject to control by the court, except to prevent an abuse by trustee of his discretion."

And in Peach v. First National Bank of Birmingham, 247 Ala. 433, syllabus 9 reads: "In the exercise of discretion by trustee, there is a rule of reasonableness, that a court will not without cause interfere to control a trustee in exercise of discretion vested in him." See, also: McCarthy v. Tierney, 116 Conn. 589; Robison et al v. Elston Bank & Trust Co. et al, 113 Ind. App. 633, and In the Matter of the Estate of Rose Ternansky, dec'd; Wm. Ternansky, Appellant, v. Margaret Rabatin and Florence Millen, Exec's and Florence Millen, Trustee (Court of Appeals of Ohio, Summit County), 141 N. E. (2d) 189, whose syllabus 7 is as follows: "Where trustee is given uncontrolled discretion, he acts much as a judicial officer and is duty bound to exercise sound discretion under the circumstances and court of equity will not tolerate abuse of sound discretion and in a proper case will compel exercise of discretion."

Finally, in Restatement of the Law of Trusts (second), it is said in Vol. 1, No. 187, at p. 402 that "where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject

to control by the court, except to prevent an abuse by the trustee in his discretion."

So that the law seems settled that the court will not interfere with the discretion of the trustee unless there is an abuse of this discretion and unless therefore the judgment of the trustee is clearly contrary to what is reasonable. Moreover, the court ordinarily will not substitute its discretion for that of the trustee, but in certain cases it will so substitute its own discretion.

So that in the present case it must be determined whether or not there was such an emergency as was referred to in the trust agreement in its refusal to pay the sum of $4,061.50 from the corpus of the trust fund; whether or not there was an abuse of discretion on the part of the trustee, and whether the court was justified in substituting its discretion for that of the trustee. In order to make such determination, it is necessary that we turn to the record in the case and review the evidence. The evidence disclosed that a divorce had been granted to Betty Culver from Knight K. Culver, Jr., and that a separation agreement had been incorporated in the divorce decree, by the terms of which Knight K. Culver, Jr., agreed to pay $69.25 a week for the support of his four minor children. This separation agreement had been approved by Knight K. Culver, Jr., and The Ohio National Bank. Later on, Knight K. Culver, Jr., went to Florida and became in arrears in his payments. Thereafter, the court reduced these payments to $60.00 a week.

At the time of filing the action to reduce the arrearage to judgment the amount owing was $4,061.50. Credit was given him for approximately $165.00 a month, the amount (interest) of the income from the trust payable to Knight K. Culver, Jr., and sent by the Bank to the mortgagee of the premises owned by Betty Culver ($90.00) and to Betty Culver ($75.00 approximately). Meanwhile the value of the trust fund has grown from $50,000.00 to approximately $73,000.00, and Betty Culver has gone to work to offset the pecuniary deficiency brought about by Knight K. Culver's failure to comply with the order of the Court in the matter of alimony.

From the testimony of Betty Culver, the following facts were established: That there are four minor children of this marriage; that she was unaware of her husband's present whereabouts; that he had made no payments; that there was an arrearage in the sum of approximately $4,061.50; that the home was "in a bad state needing all kinds of repairs; that there was an estimate of $185.00 as the cost of repairs to the outside of the house (repairs and paint); that there was also cement work and "brick work to be done" and there was "yard work to be done and—windows to be replaced and screens to be replaced"; that the inside needed electric repairs; that "the wiring had deteriorated; needs paint, repair work on the inside; walls, ceilings, woodwork and kitchen needs papering and we need a new garbage disposal"; that nothing had been "done on the outside of the house since we bought it"; that she had incurred "quite a few" obligations; that she "had to borrow from my mother and father to keep going at times and my sister"; that these

borrowed funds were necessary for the support of the children; that she owed her mother $350.00; her father $250.00; her sister and brother-in-law $150.00; that she owed $175.00 on a loan on her car and $300.00 on her ring; that she owed interest on the last named loan ($9.00 a month) in the sum of about $75.00 or $80.00; that she owed a hospital bill (about $75.00), a doctor bill ($50.00); that she herself had gone to a doctor about once a month and that she had paid for each visit; that the doctor had advised her with reference to her own hospitalization; that around once a month she got a "severe depression" and that she was "in a very nervous condition"; that she paid for plumbing bills, washer and dryer repair bills and T. V. repair bills, as well as automobile repair bills; that she had an outstanding grocery bill; that she owed for raincoats and bathing suits for the children; that the total of all these bills is about $1800.00; that her mother took care of the children generally without pay, while Betty Culver worked; that her mother was no longer able to care for the children and that she had to pay $15.00 a week for care of her children; that the children needed clothes; that there were no other assets of any kind; that the children needed dental and medical care; that the matter grew more critical and that the expense of the children was increasing; that she owed a drug bill and attorney's fees.

Now the court in its entry of August 13, 1959, granted the motion for an order reducing the arrearage to judgment; and in its entry of November 4, 1959, on the matter of the motion for a reconsideration of the order of August 13, 1959, found that Knight K. Culver, Jr., was in arrears in his alimony payments in the sum of $4,061.50, that "the children are in need of medical care, for clothing, repairs to the house - - - - and that an emergency does exist as provided for in Article 2 of the Trust Agreement, dated May 15, 1954, between the defendant Knight K. Culver, Jr., and the defendant Ohio National Bank and that to overcome said emergency, the defendant, Ohio National Bank, should pay to the plaintiff the sum of $4,061.50 as permitted by the terms of said Trust Agreement."

This judgment of the Court should be affirmed. It is true that the Court will not interfere with the discretion of the trustee unless that discretion has been abused. The evidence clearly shows such abuse. The court by implication so held when it ordered the payment of $4,061.50 to the plaintiff. The Court in ordering such payment did substitute its judgment for that of the Trustee. Such action is unusual but not without precedent. (See, 54 Am. Jur. 181 p. 143.)

The judgment of the trial court should be affirmed because it is to the best interests of the grantor (in the trust fund, Knight K. Culver, Jr.), that his obligations should be fulfilled; that the dire need of the children constitutes an emergency as contemplated in Article 2 of the Trust Agreement, and that the refusal of the Ohio National Bank to pay the sum of $4,061.50 in accordance with the terms of the Trust Agreement results in an abuse of discretion lodged in the trustee.