*In re* MARRIAGE OF STEVEN WAYNE REED, Petitioner-Appellant, and BETTY JEAN REED, Respondent-Appellee.

Fifth District    No. 80-455

Opinion filed September 25, 1981.

Katherine J. Tillery, of Kassly, Bone, Becker, Dix & Tillery, P. C., of Belleville, and Steven P. Seymour, of Effingham, for appellant.

F. Ronald Ealy, of the Law Offices of Ealy, Bower & Meyer, of Effingham, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

On September 18, 1979, petitioner Steven Reed brought an action for dissolution of marriage pursuant to section 401 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 401). He now appeals from that portion of the dissolution decree setting forth the property distribution, the rehabilitative maintenance, and the visitation. He raises the following issues for our consideration: First, whether the trial court erred in awarding respondent one-half of the marital property; second, whether the trial court erred in awarding respondent rehabilitative maintenance in the amount of $2400 per year for a period of two years; third, whether the trial court erred in finding that the interest earned on petitioner's nonmarital property was marital property; fourth, whether the trial court erred in requiring petitioner to assume respondent's indebtedness for certain real property; and fifth, whether the trial court erred in its visitation order. We affirm the trial court on all points.

■■ The first issue is whether the trial court erred in awarding Mrs. Reed one-half of the marital property. Section 503(c) of the Act provides the court with guidance when it is faced with the complex task of dividing marital property. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) It requires the trial court to consider all relevant factors including, but not limited to, the 10 factors thereafter listed. (*In re Marriage of Fryer* (1980), 88 Ill. App. 3d

454, 457, 410 N.E.2d 596.) An examination of the record reveals that the trial judge referred explicitly to many of these factors when deciding to award one-half of the marital estate to Mrs. Reed. If a property distribution results in substantially equal shares for both parties and it is apparent from the record that the court thoughtfully and carefully applied the rationale of the statute to the facts before it, then the court did not abuse its discretion and the award will not be disturbed on review. *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 1129, 403 N.E.2d 730.

Mrs. Reed made major contributions as a homemaker during the couple's 34-year marriage. As a farmer's wife, she did the gardening, canning, and packaging of the meat; this in addition to raising 14 children and managing the household. Though different in kind from the contributions of her former husband, they were no less significant. While an equal distribution of property is not always an equitable distribution, in this case the facts warranted it. *In re Marriage of Stralow* (1981), 95 Ill. App. 3d 235, 237, 419 N.E.2d 1227.

■■ The argument that the respective one-half shares of each party should be offset in favor of the father because he received custody of the five minor children must be balanced with the argument that the mother is virtually unemployable and unable to support herself. Mr. Reed retained possession of the marital residence, the 100-acre farm, the livestock, the farm equipment and the machinery. These alone constitute ample means to provide a livelihood for himself and his children. In addition, he possesses skills as a carpenter and owns one-fourth interest in a construction business with three of his sons. He testified that should he decide to liquidate the partnership and devote himself full-time to farming, he would be able to make the farm even more profitable than it had been in the past. Taking into account his other assets, it is plain that he has sufficient resources to maintain a secure and productive style of life.

Mrs. Reed, on the other hand, has no marketable skills and has been employed outside the home only once since she was married (a brief stint as a factory worker). After moving from the marital home, she found a job as a waitress in a truck stop but lost that after the first month. She has been unable to locate any other work.

The judge undoubtedly considered the great discrepancies in their economic status. When dividing the marital estate, he decided that Mrs. Reed's "just proportion" amounted to nearly one-half of the estate even though Mr. Reed had to support the five minor children. We agree with the trial court's assessment.

■■ Appellant's suggestion that the mother should be required to contribute child support to the marital household is totally unrealistic in light of her age, lack of training, and poor income-earning potential. While we

acknowledge generally that both parents should exercise responsibility for their children's support, this obligation is not mandatory in all situations. (*Tilmon v. Tilmon* (1979), 74 Ill. App. 3d 111, 118, 391 N.E.2d 1086.) In *Tilmon* the court denied the father's request for support from a noncustodial mother, noting that the children were close to the age of majority and that the mother had no foreseeable opportunity to earn money. (*Tilmon*, 74 Ill. App. 3d 111, 117.) In this case, five children will remain with the father, but two of them are near the age of majority and will probably no longer be dependent upon him for total support. We have already pointed out the relative ease with which Mr. Reed can earn a living as contrasted with Mrs. Reed's inability to do so. We find the cases from other jurisdictions unpersuasive, and decline to set a precedent whereby support payments are imposed on the noncustodial parent regardless of that parent's ability to pay and regardless of the needs of the children. We remind the parties that section 505 emphasizes that the amount of child support is to be determined by accommodating the needs of the children with the available means of the parties. (Ill. Rev. Stat. 1979, ch. 40, par. 505; accord, *Dull v. Dull* (1979), 73 Ill. App. 3d 1015, 1019, 392 N.E.2d 421.) The record demonstrates that these children's needs will be adequately met by their father. Thus, child-support payments are unnecessary.

■■ Appellant further challenges the part of the property distribution which orders Mr. Reed to assume his former wife's indebtedness. As previously stated, the trial court awarded the entire farm to Mr. Reed, the spouse in whose custody the children had been placed. Recognizing that Mrs. Reed wished to remain in a home she recently purchased, the judge then offset her share in the marital residence by requiring Mr. Reed to take over her loan and make her house payments. This arrangement was sound and well within the trial court's discretion. *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1085, 412 N.E.2d 1336.

■■ Mr. Reed's challenge of the two-year rehabilitative maintenance award is also without merit. Section 504 authorizes a maintenance order in situations where the recipient lacks sufficient property, is unable to support herself, or is otherwise without sufficient income. The court must balance all relevant factors in determining the amount and duration of the award, including the party's needs and available resources. The trial court's decision to grant the wife $2400 per year for two years was a reasonable approach. We doubt that the court anticipated Mrs. Reed would train or educate herself for a new career during the two-year interim. More than likely the trial court hoped to provide an economic cushion during that time between the commencement of the lump sum property settlement payments from Mr. Reed and the time their investment would begin producing a cash return. Assuming Mrs. Reed will

eventually support herself on the interest and other investment proceeds derived from her share of the marital estate, the equitable approach was to provide her with a small temporary maintenance award for the years before that income-earning potential could be realized. Since the overall picture must be considered in disposing of marital property (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 636, 397 N.E.2d 488), we believe the court displayed a remarkable degree of fairness and wisdom, and thus affirm the marital property award in its entirety.

■■ Appellant next contends that the trial court erred in characterizing the interest earned on Mr. Reed's nonmarital property as marital property. Although property acquired before marriage is nonmarital and its increase in value is likewise nonmarital, any income derived from such property during marriage is deemed marital. The legislature intended this rule to apply to premarital accounts drawing interest during marriage, as in the case before us. (Ill. Ann. Stat., ch. 40, par. 503(a)(6), Historical and Practice Notes, at 463 (Smith Hurd 1979); accord, *Broussard v. Broussard* (La. 1976), 340 So.2d 1309, where interest on premarital savings was held to be community property.) Thus, the decision that Mr. Reed's certificate of deposit was nonmarital property but that the interest earned on the account was marital property is completely consistent with statutory language and legislative intent.

■■ Finally, Mr. Reed argues that the trial court erred in its visitation order. We feel, however, that the arrangement reflects a considered and realistic approach to the problem. The order requiring Mr. Reed to assume responsibility for transporting his two youngest sons home on Sunday is fair and reasonable and does not constitute a hardship. Making it mandatory that the three older children participate in the trip once a month insures that a minimum of contact between the older children and their mother will occur. It is the most that could be hoped for, in light of the hostility expressed by the Reed children. The court is optimistic that this hostility will diminish and a sense of affection will be renewed. The present visitation schedule affords the members of the family the opportunity to communicate with each other, and will thus foster the atmosphere in which such a renewal may take place.

As with most issues on review, the trial court is accorded great deference in domestic matters. It makes its decision after hearing all the testimony and assigning weight to various factors. Absent a finding of an abuse of discretion, we will not overturn a fair and well-reasoned decision. The judgment of the trial court is hereby affirmed.

Affirmed.

KASSERMAN, P. J., and WELCH, J., concur.