In re MARRIAGE OF David JONES, Petitioner/Cross–Respondent,

and

Patricia L. Jones, Respondent/Cross–Petitioner.

No. 90SC22.

Supreme Court of Colorado, En Banc.

June 17, 1991.

Barry D. Roseman, Denver, for petitioner/cross-respondent.

Mygatt & Bratun, Juliana J. Bratun, Boulder, for respondent/cross-petitioner.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *In re Marriage of Jones*, 791 P.2d 1173 (Colo. App.1989). In this dissolution of marriage

proceeding, the court of appeals held that the increase in value of a discretionary trust, which named the wife as a beneficiary, was not marital property, but that income derived from the trust during the marriage was marital property. We granted certiorari to review the court of appeals holding and on the issue of whether the wife's status as a beneficiary of the trust should be considered an economic circumstance in dividing the marital property. We affirm in part, reverse in part, and remand with directions.

The marriage of Patricia and David Jones was dissolved in July 1987, after twelve years. The only disputed issue in this dissolution proceeding was the division of marital property. During their marriage, the wife became a beneficiary of a testamentary trust created by the will of Lois M. Distel, the wife's mother (Distel trust). The named trustees were the wife's father, Joseph A. Distel, and the First National Bank of Boulder, Colorado. The trustees had uncontrolled discretion to distribute income and principal from the trust to Joseph Distel, the wife, or to the wife's descendants for expenses that the trustees determined to be necessary for their "health, welfare, comfort, support, maintenance and education." The trust was to terminate upon the death of both Joseph Distel and the wife,[1] and the trust proceeds were to be distributed to the wife's descendants, if any, otherwise to Lois Distel's heirs.

When originally funded, the trust corpus was valued at $118,378.93. That value increased to $160,519.52 by November 1987, when the judgment and permanent order dividing the Jones' marital property was issued by the district court. During her marriage to David Jones, the wife received approximately $38,000 in income from the trust.

In June 1981, Joseph Distel purchased a house in Lafayette, Colorado, for $138,500. Shortly thereafter, the wife and husband moved into the Lafayette house rent free. The couple extensively remodeled the house, both devoting a substantial amount of their own time and physical labor to that renovation. The wife paid for the materials, using the $38,000 she received from the trust. In March 1983, after the renovations were substantially complete, Joseph Distel deeded the house to the wife as her sole and separate property, subject to two deeds of trust and a promissory note. At that time, the house had increased in value to between $160,000 and $177,000. From March 1983 until the date of the decree of dissolution, July 30, 1987, the value of the house appreciated another $15,000.

The trial judge valued the marital estate at $55,000, and ordered distribution of 55% to the wife and 45% to the husband. The court found that neither the increase in the value of the trust corpus nor the increase in value of the Lafayette house between 1981 and March 1983 was marital property.

The court of appeals affirmed the trial court's finding that the increase in value of the trust was not marital property. 791 P.2d at 1174–75. The court said, however, that the income received by the wife from the trust was marital property, and because those payments had primarily been used to renovate the house, the increase in the value of the house based on those renovations was marital property subject to division. _Id._ at 1175–76.[2] We granted the

---

1. Article V, section 3, of the trust provision contained in Lois Distel's will provided:
   This trust shall terminate (unless all principal is sooner paid out in accordance with the discretionary powers above granted in Section 2) upon the fulfillment of whichever of the following conditions shall first occur:
   (a) Upon the death of the last survivor of my husband, Joseph, and my daughter, Pat, provided that all of the children of my said daughter then living shall have attained the age of twenty-one (21) years;
   (b) When all of the children of my said daughter then living shall have attained the age of twenty-one (21) years, provided that my said husband and said daughter shall have died prior to such time;
   (c) Upon the death of the last survivor of my said husband and my said daughter, and all of the children of my said daughter who are living at the time of my death.

2. The court of appeals also held that the trial court had failed to properly consider the value of the husband's labor expended in renovating the house, and hence his contribution to the house's appreciation before March 1983. The court remanded the case for reconsideration by

husband's petition for certiorari on the issues of whether the appreciation in value of the trust corpus was marital property, and whether the wife's interest in the trust was an economic circumstance. We granted the wife's cross-petition for certiorari on the issue of whether income from the trust was marital property.

## I

■ The husband claims that the court of appeals erred in holding that the appreciation in value of the trust corpus during the marriage was not marital property.

Colorado's Uniform Dissolution of Marriage Act, §§ 14–10–101 to –133, 6B C.R.S. (1987 & 1990 Supp.), distinguishes marital and separate property. § 14–10–113. Under section 14–10–113(2), all property acquired by either spouse subsequent to the marriage is considered marital property except:

> (a) Property acquired by gift, bequest, devise, or descent;
>
> (b) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
>
> (c) Property acquired by a spouse after a decree of legal separation; and
>
> (d) Property excluded by valid agreement of the parties.

Section 14–10–113(1) requires an equitable distribution of marital property, regardless of fault, after all relevant factors are considered, including the contributions of each spouse, the value of property set apart to each spouse, the economic circumstances of each spouse, and any increase, decrease, or depletion in the value of any separate property during the marriage. *See Carlson v. Carlson*, 178 Colo. 283, 497 P.2d 1006 (1972); *In re Marriage of McGinnis*, 778 P.2d 281 (Colo.App.1989). Separate property acquired either before the marriage, or under subsections 14–10–113(2)(a) or (b), however, is considered marital property, and thus divisible, only to the extent that "its present value exceeds its value at the time of the marriage or at the time of the

acquisition if acquired after the marriage." § 14–10–113(4); *see In re Marriage of Campbell*, 43 Colo.App. 72, 599 P.2d 275 (1979).

Both parties agree that the trust corpus is not marital property and thus not divisible between them. The husband, however, argues that the trust is separate property under subsection 14–10–113(2)(a), and that the increase in value of the trust corpus during the marriage is marital property subject to division. Although any appreciation in the value of separate property during a marriage is marital property under section 14–10–113, we have said that "there are necessary limits upon what may be considered 'property.'" *In re Marriage of Graham*, 194 Colo. 429, 432, 574 P.2d 75, 76 (1978).

In *Graham*, we said that a college degree, while a relevant factor in determining the proper division of property, was not itself "property," either marital or separate. *Id.* at 432–33, 574 P.2d at 77–78. "An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of 'property.' It does not have an exchange value or any objective transferable value on an open market.... It cannot be assigned, sold, transferred, conveyed, or pledged." *Id.* at 432, 574 P.2d at 77. *See also Menor v. Menor*, 154 Colo. 475, 482, 391 P.2d 473, 477 (1964) (husband's insurance policy with no cash surrender value was not an asset subject to division as "property").

In *In re Marriage of Rosenblum*, 43 Colo.App. 144, 602 P.2d 892 (1979), the court of appeals rejected the argument now asserted by the husband. In *Rosenblum*, the husband, while married, was named both a beneficiary and a co-trustee for a trust created by the husband's mother. *Id.* at 145, 602 P.2d at 893. During the marriage, the trust increased in value from $200,000 to $3,500,000, and the wife claimed that the increase was marital property subject to division. *Id.* The court of appeals rejected that argument, concluding

---

the trial court on that question. That issue is not before us, nor do we address it, and the

court of appeals remand to the district court on that issue must be followed.

that the husband's rights in the trust were not "property" for purposes of section 14–10–113. *Id.* at 147, 602 P.2d at 894. As here, the trustees in *Rosenblum* were given absolute discretion to distribute all, any, or none of the trust income or principal, and, so long as the husband was a trustee, no income or principal could be distributed to him in excess of that necessary for his health, education, support, or maintenance.

Although a beneficiary of such a discretionary trust does have rights therein, those rights are merely an expectancy and do not rise to the level of property....

Husband's rights in the trust have no cash surrender, loan, redemption, or lump sum value, and no value realizable after death. Neither could the corpus or income of the trust be reached by his creditors until a distribution occurred.

*Rosenblum,* 43 Colo.App. at 146, 602 P.2d at 894 (citations omitted).

The court of appeals in *Rosenblum* relied in part on *Ellis v. Ellis,* 191 Colo. 317, 552 P.2d 506 (1976), which held that future payments of military retirement pay were not "property" for purposes of section 14–10–113. While acknowledging its applicability, the husband here argues that *Rosenblum* was overruled by *In re Marriage of Gallo,* 752 P.2d 47 (Colo.1988), which overruled *Ellis* and held that vested and matured military retirement pay is property under section 14–10–113, and *In re Marriage of Grubb,* 745 P.2d 661 (Colo.1987), which held that vested but unmatured employer-supported pension plans are property subject to division.

In *Ellis,* we said that military retirement pay was not marital property because it did not have "any of the following elements: cash surrender value; loan value; redemption value; lump sum value; and value realizable after death." 191 Colo. at 319, 552 P.2d at 507. Two years later, we distinguished employee contributions to the Public Employees Retirement Association (PERA) when holding that those contributions were marital property subject to division. *In re Marriage of Mitchell,* 195 Colo. 399, 579 P.2d 613 (1978). In *Mitchell,* we emphasized that there was nothing "speculative or uncertain about the husband's right to the money," 195 Colo. at 403, 579 P.2d at 616, and then distinguished PERA contributions from military retirement pay on the basis that the military retirement plan in *Ellis* would have no value if the employee died before he retired, and thus its future value was speculative. *Id.* at 403, 579 P.2d at 617.

Subsequently, in *In re Marriage of Grubb,* 745 P.2d at 664, we rejected the analysis of retirement benefits used in *Ellis* and *Mitchell* and held that a husband's interest in a vested but unmatured employer-supported pension plan was marital property subject to division.[3] Rather than look to whether a future contingency, such as death, might divest the husband's interest in the pension, we said that the true nature of retirement benefits, "far from being a mere gratuity deriving from the employer's beneficence, [is] nothing less than a form of deferred compensation— that is, they are consideration for past services performed by the employee and constitute part of the compensation earned by the employee." *Id.* The fact that a vested pension plan does not mature until the employee retires "does not render the plan so speculative as to remove it from the category of marital property." *Id.* at 665. Finally, we said that "the controlling consideration [was] that an employee who is fully vested under a pension plan has a *right* to receive payment at some time in the future." *Id.* Such a right, according to *Grubb,* is not a mere expectancy but instead an enforceable contractual right and thus a form of property. *Id.*

In *Gallo,* we extended the reasoning of *Grubb* to overrule *Ellis* and hold that vested and matured military retirement pay was marital property. 752 P.2d at 54. Once again, we relied on the fact that retirement plans were properly part of the

---

**3.** "Vesting" occurs when an employee completes the minimum required terms of employment necessary to receive retirement pay at some future time; a vested right "matures" when the employee reaches retirement age and elects to retire. *Grubb,* 745 P.2d at 665.

consideration earned by the employee and that as such, the employee had a contractual right to the benefits. *Id.* at 51.

The crux of both *Grubb* and *Gallo* was that the spouse had a vested right to the benefits under both retirement plans that were compensation for employment services rendered. On the other hand, in *In re Marriage of Olar,* 747 P.2d 676 (Colo.1987), we reaffirmed our holding in *Graham* that advanced educational degrees were not property for purposes of section 14–10–113 because, while pension rights constitute a current asset that the individual had a contractual right to receive, "the enhanced income resulting from a professional degree is a 'mere expectancy.'" *Id.* at 679–80 (citing *Archer v. Archer,* 303 Md. 347, 355–356, 493 A.2d 1074, 1079 (1985)). Thus, while *Rosenblum*'s conclusion that the trust was not property because it had no cash surrender, loan, redemption, or lump sum value, and no value realizable after death, may now be in question, we are not persuaded that its ultimate outcome is no longer valid. Under *Gallo, Grubb,* and *Olar,* the focus of our inquiry is the interest of a spouse in the property at issue.

■ The Distel trust is completely discretionary. The trust provides that the trustees *may* pay or apply for the benefit of the Joseph Distel, the wife, or the wife's descendants income, principal or both that the trustees, "in their uncontrolled discretion, determine to be necessary or advisable for the health, welfare, comfort, support, maintenance and education of such persons without the necessity of equalization or proration among them." The discretion vested in the trustees is fortified by a provision that the trustees have "full and uncontrolled discretionary power and authority to ... [d]ivide and distribute my estate and the trusts in kind or in money or partly in each, or by way of undivided interests, even if shares be composed differently, utilizing such valuations as they deem correct." The fact that the trustees are limited to disbursing funds to the wife for only her support, *if* they decide to disburse funds at all, does not deprive the trust of its discretionary character. Nor

does the fact that some income has been distributed to the wife, at the sole discretion of the trustees, change the nature of the underlying trust.

■ Although a beneficiary of a discretionary trust has an equitable interest in the subject matter of the trust, 2 *A. Scott on Trusts* § 130 at 409 (4th ed. 1987), the beneficiary could not force the trustee to pay income or principal unless she could establish fraud or abuse of discretion on the trustees' part.

> Where by the terms of the trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his discretion shall see fit to pay or apply, the extent of the interest of the beneficiary depends on the manifestation of intention by the settlor.... The beneficiary cannot obtain the assistance of the court to control the exercise of the trustee's discretion except to prevent an abuse by the trustee of his discretionary power.... *If the settlor manifested an intention that the discretion of the trustee should be uncontrolled, the court will not interfere unless he acts dishonestly or from an improper motive, or fails to use his judgment.*

2 *A. Scott on Trusts* § 128.3 (emphasis added); *see also Culver v. Culver,* 112 Ohio App. 100, 103–104, 169 N.E.2d 486, 488–89 (1960).

■ While the wife may have some equitable beneficial interest in the subject matter of the trust, whether she receives money from the trust depends not on a future contingency, but on the sole discretion of the trustees. Thus, unlike a vested retirement plan, the beneficiary of a discretionary trust has no contractual or enforceable right to income or principal from the trust, and cannot force any action by the trustee unless the trustee performs dishonestly or does not act at all. The interest of the beneficiary in a discretionary trust is not assignable and cannot be reached by his or her creditors. G. Bogert, *Trusts,* § 41 (6th ed. 1987). The beneficiary, then, has no vested "property" right to receive

payment from the trust. "Until the trustee elects to make a payment[,] the beneficiary has a mere expectancy." G. Bogert, *Trusts & Trustees*, § 228, at 512–13 (2d ed. 1979). "[W]hether it ripens into a benefit depends on the uncontrolled discretion of the trustee, even though [the beneficiary] may secure something of value if the trustee later elects to pay or apply. Few will extend credit to the beneficiary on reliance on being able to get satisfaction from his *highly speculative interest.*" *Id.* at 515 (emphasis added). *See Matter of Estate of Brooks*, 42 Colo.App. 333, 335–36, 596 P.2d 1220, 1221 (1979) (beneficiary of a discretionary trust has no absolute right to any distribution); *cf. Lynch v. Lynch*, 147 Vt. 574, 577, 522 A.2d 234, 236 (1987) (trust created by a spouse who retains a power of revocation is marital property subject to division).

A discretionary trust differs from those trusts that grant the beneficiary some future, vested benefit not within the discretion of the trustee to withhold, but whose value may be uncertain at the time of the dissolution of marriage. *See, e.g., Mey v. Mey*, 79 N.J. 121, 125, 398 A.2d 88, 89–90 (1979) (husband entitled to receive his share of principal when he reached the age of twenty-five, which he did during the marriage); *Davidson v. Davidson*, 19 Mass. App. 364, 371–373, 474 N.E.2d 1137, 1143–45 (1985) (vested remainder interest that would be distributed to the husband when his mother died and he reached the age of thirty-five); *Trowbridge v. Trowbridge*, 16 Wis.2d 176, 184–187, 114 N.W.2d 129, 134–36 (1962) (husband entitled to payment of the entire principal and undistributed income upon his mother's death). Here, on the other hand, the wife had no right at any time to either the trust corpus or income. It was the wife's descendants, if any, who would receive any undistributed income or principal from the trust upon her and her father's death. We therefore agree with, and affirm, the court of appeals' conclusion that a discretionary trust corpus cannot be considered the separate property of a beneficiary for purposes of division of property under section 14–10–113.[4]

## II

■ We do not agree, however, with the court of appeals' holding that, although the trust corpus was not the wife's separate property, the income she received from the trust was "marital income" subject to division. *Jones*, 791 P.2d at 1175. The court stated that under the Uniform Marriage and Divorce Act (UMDA), 9A U.L.A. § 307 n. 92 (1987), "income from both marital and non-marital property received during the marriage is deemed to be marital property."[5] 791 P.2d at 1175. The court also relied on cases from other jurisdictions holding that income derived from nonmarital property during the marriage is marital property. *Id.*

The court of appeals' reliance on the UMDA was misplaced. The text of section 307 of the UMDA does not differentiate or define marital or nonmarital property, but instead sets out the factors for the trial court to consider when making an equitable distribution of property. Moreover, the text of section 14–10–113, which defines what is separate and marital property, controls in Colorado over the model act.

The cases cited by the court of appeals are, as well, inapposite. The incomes at issue in those cases were derived from what would be classified as separate property in Colorado. *In re Marriage of Reed*, 100 Ill.App.3d 873, 877, 56 Ill.Dec. 202, 205,

---

**4.** We do not address whether vested interests in trusts subject to divestment would be either marital or separate property for purposes of section 14–10–113. Other jurisdictions vary significantly when determining what interests constitute property subject to division in divorce proceedings. For a discussion of different approaches, see *Davidson*, 19 Mass.App. at 372–373 n. 11, 474 N.E.2d at 1143–45 n. 11; *see also Powell v. Powell*, 395 Pa.Super. 345, 353–357,

577 A.2d 576, 580–82 (1990) (holding that, despite earlier ruling that nonvested and vested pensions were marital property, increase in value of vested trusts subject to divestment was not marital property).

**5.** Note 92 is a compilation of cases analyzing property subject to division from various jurisdictions.

427 N.E.2d 282, 285 (1981) (income derived from certificate of deposit acquired by husband prior to the marriage); *Sousley v. Sousley,* 614 S.W.2d 942, 943–44 (Ky.1981) (income from stock owned by the husband prior to the marriage); *Brodak v. Brodak,* 294 Md. 10, 25–26, 447 A.2d 847, 855 (1982) (income was derived from real property given to the husband as a gift from his parents); *In re Marriage of Williams,* 639 S.W.2d 236, 237 (Mo.App.1982) (income from calves acquired before the marriage); *In re Marriage of Arneson,* 120 Wis.2d 236, 243–244, 355 N.W.2d 16, 19–20 (1984) (property purchased with dividend income from stock given to husband as a gift from his father).

Although in Colorado, it is unsettled whether income from, as opposed to an increase in value of, separate property is treated as marital property, that issue is not before us here. The income here was from a trust that was neither the wife's marital nor separate property. For purposes of section 14–10–113, the Distel trust was not the wife's "property" in any sense as she had no right to either the income or principal at any time. Hence, the income received by the wife from the trust is more properly a "gift" under subsection 14–10–113(2)(a), and thus not divisible.

### III

■ We agree, however, with the husband's contention that the wife's expectancy interest in the trust should be considered an economic circumstance under subsection 14–10–113(1)(c). In *Rosenblum,* after holding that the trust at issue was not "property," the court of appeals said "[the husband's] rights in the trust are to be considered by the court as any other 'economic circumstance' of the husband in determining a just division of the marital property pursuant to § 14–10–113(1)(c)." 43 Colo.App. at 147, 602 P.2d at 894. In *Olar,* we said that the contribution of a spouse to the other spouse's educational degree was a "relevant factor" under section 14–10–114 in determining the proper award of maintenance, notwithstanding that the educational degree itself was not

"property" within the meaning of section 14–10–113. 747 P.2d at 680. The trial court must consider all relevant factors when dividing property, even those factors that might be difficult to gauge, such as the value to the beneficiary of a discretionary trust. *See* § 14–10–113(1); *Carlson v. Carlson,* 178 Colo. at 289, 497 P.2d at 1009.

Although the wife points to differences between her interest in the Distel trust and the husband's trust interest in *Rosenblum,* those differences do not prevent the trial court from taking the trust into consideration as an economic circumstance. It is within the trial court's discretion to determine the weight to apply to that circumstance, and the court's findings will not be disturbed unless clearly erroneous. *Mulhollen v. Mulhollen,* 145 Colo. 479, 358 P.2d 887 (1961). To the extent that it has already not done so, the trial court on remand should consider the wife's interest in the trust as an economic circumstance.

Accordingly, we affirm that part of the court of appeals opinion holding that the increase in value of the Distel trust corpus is not marital property subject to division, reverse the court of appeals' holding that the income derived from the trust is marital property, and hold that the wife's interest in the trust is an economic circumstance that may be considered. We return this case to the court of appeals with directions to vacate the order for modification of distribution of property, and to remand to the district court for reconsideration of the division of marital property consistent with the views expressed in this opinion.

Justice QUINN dissents in part.

Justice QUINN dissenting in part:

I respectfully dissent from Part I of the court's opinion. Section 14–10–113(4), 6B C.R.S. (1987), states that an asset acquired by either spouse during the marriage by gift, bequest, devise, or descent shall be considered as marital property to the extent that its present value exceeds its value at the time of acquisition. The majority holds that any increase in value of the corpus of a testamentary trust during the marriage of the beneficiary is not marital

property because the trust was purely discretionary and the beneficiary, Patricia Jones, has nothing more than a mere expectancy until such time as the trustees elected to make a payment to her. Maj. op. at 1156–1157. I view the interest of Patricia Jones in the testamentary trust as a vested beneficial interest in trust property. Consequently, I would hold that the increase in the value of the trust assets during the marriage constitutes marital property under section 14–10–113(4).

In *In re Marriage of Grubb*, 745 P.2d 661 (Colo.1987), we held that a husband's interest in a vested but unmatured employer-supported pension plan constituted marital property subject to division in a dissolution proceeding, even though the receipt of benefits under the plan was contingent upon the husband's survival until the actual commencement of retirement. We emphasized in *Grubb* that "[a] rule directed to the disposition of property in a dissolution proceeding can only be as sound as the economic reality which it attempts to service." 745 P.2d at 664. Prior to our decision in *Grubb*, we had held in *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976), that military retirement pay was not marital property because it lacked any of the following elements: "cash surrender value; loan value; redemption value; lump sum value; and value realizable after death." 191 Colo. at 319, 552 P.2d at 507. We had also held in *In re Marriage of Mitchell*, 195 Colo. 399, 579 P.2d 613 (1978), likewise decided prior to *Grubb*, that employee contributions to the Public Employees Retirement Association fund were marital property because there was nothing uncertain about the employee's right to the money, since the employee could quit work and withdraw the contributions. 195 Colo. at 403, 579 P.2d at 616. In *Grubb*, we disavowed our prior analysis of marital property in *Ellis* and *Mitchell* because such analysis failed to account for the "economic reality" of the interest in question. *Grubb*, 745 P.2d at 664. We went on to conclude in *Grubb* that, although the husband's receipt of pension payments under a vested but unmatured pension plan is contingent on some future event, this contingency

"does not render the plan so speculative as to remove it from the category of marital property." 745 P.2d at 665. By a similar analysis, the discretionary nature of the testamentary trust in this case does not render Patricia Jones' interest in the increase in the value of the trust corpus so speculative as to render it something other than marital property.

The creation of a trust results "in the creation in the beneficiary of an interest in the subject matter of the trust." *Restatement (Second) of Trusts*, § 74 comment a (1959). An equitable interest in trust property is regarded as a property interest of the same kind as a trust *res* and is more than a mere *chose in action*. *Senior v. Braden*, 295 U.S. 422, 433, 55 S.Ct. 800, 803, 79 L.Ed. 1520 (1935); *see also Brown v. Fletcher*, 235 U.S. 589, 599, 35 S.Ct. 154, 157, 59 L.Ed. 374 (1915); II W. Fratcher *Scott on Trusts*, § 130 at 406 (1987). In this case, the settlor, Lois Distel, created a testamentary trust which gave the trustees, one of whom was Lois' husband and the other the First National Bank of Boulder, the right to distribute income and invade the principal to the extent "necessary or desirable for the health, welfare, comfort, support, maintenance and education" of Patricia Jones, who is Lois' daughter, or Lois' husband. The trustees have no obligation to preserve the corpus of the trust for future beneficiaries, nor are they obligated to equalize or prorate the distributions to the beneficiaries. Patricia Jones' interest in the trust, far from being an unvested future interest, became absolutely vested at the time of her mother's death. While the trustees have discretion in distributing the income and principal, the fact remains that Patricia Jones benefitted by the increase in the value of the trust corpus and received approximately $38,000 from the trust over a period of five years during her marriage. This substantial distribution belies the notion that her interest in the trust corpus was a mere expectancy rather than a property interest.

Where, as here, a spouse has a vested beneficial interest in a testamentary trust and receives substantial trust income dur-

ing the marriage, the spouse's vested beneficial interest constitutes a property interest in the subject matter of the trust, with the result that any increase in value of the trust corpus should be subject to division as marital property pursuant to section 14-10-113(4). Several courts in other jurisdictions have concluded that a spouse's interest in future benefits, in some cases less certain than Patricia Jones' interest in the trust under consideration, was subject to division in a dissolution proceeding. In *Davidson v. Davidson*, 19 Mass.App. 364, 474 N.E.2d 1137 (1985), for example, a father established a testamentary trust for his wife with the remainder interest in his married son. Because the trustees had uncontrolled discretion to invade the principal for the benefit of the settlor's wife, the married son's remainder interest was uncertain. The court nevertheless concluded that the married son's remainder interest under the testamentary trust, "while it may have been at the outer limits, constituted a sufficient property interest" to make it part of the married son's marital estate for purposes of property division. *Id.* at 1144. Neither the "uncertainty of value" nor the "inalienability" of the married son's interest by virtue of a valid spendthrift clause were sufficient "to preclude consideration of the interest as subject to division." *Id.* (footnote omitted). In *Trowbridge v. Trowbridge*, 16 Wis.2d 176, 114 N.W.2d 129 (1962), a father created a life estate in his wife and a remainder interest in his married son after the death of the settlor's wife and the married son's attainment of the age of forty years of age, with the settlor's wife having power to invade the principal under certain conditions. Despite the fact that the married son could possibly receive nothing under the trust, the court "had no doubt" that the son's interest was subject to division in a divorce proceeding, 114 N.W.2d at 134; *cf. McGinley v. McGinley*, 388 Pa.Super. 500, 565 A.2d 1220 (1989) (husband's vested future interest in testamentary trust was "property," even though husband's right to receipt of the trust corpus was subject to divestment if he did not survive his father; because, however, husband's interest vested at his birth, it was not "marital property" under Pennsylvania statute defining such property as property acquired during marriage).[1]

Although the issue of apportioning the increase in the value of the trust during the marriage to Patricia Jones may present a somewhat difficult question, similar difficulties in valuation are faced by trial courts every day. As in the case of valuing prospective pension payments, a court can employ any of several alternatives. One alternative might to place a value on Patricia Jones' interest in the increased value of the trust corpus by utilizing a table similar to that for valuing a remainder interest for purposes of estate taxes. *McCain v. McCain*, 219 Kan. 780, 549 P.2d 896, 900 (1976). Another alternative might consist of ordering a percentage of future funds received by the beneficiary to be paid over to the other spouse. *Trowbridge*, 114 N.W.2d at 134. Other alternative methods can be employed, based on a trial court's "experience, insight and knowledge." *Davidson*, 474 N.E.2d at 1145, n. 12.

I would reverse the judgment of the court of appeals and hold that Patricia Jones has a vested beneficial interest in her mother's testamentary trust, that such interest is a property interest, and that any increase in value of the trust corpus during her marriage is "marital property" subject to division in a dissolution proceeding. I accordingly dissent from Part I of the court's opinion.

---

1. In addition to our decision in *In re Marriage of Grubb*, 745 P.2d 661 (1987), other Colorado cases have recognized that the value of marital property need not be immediately ascertainable in order to be subject to division. For example, the court of appeals in *In re Marriage of Fields*, 779 P.2d 1371 (Colo.App.1989), held that an unliquidated personal injury claim arising during marriage is marital property. In another case, the court of appeals held that an attorney's contingency fees were valuable contract rights and as such constituted part of his marital estate, even though the fees were payable after dissolution. *In re Marriage of Vogt*, 773 P.2d 631 (Colo.App.1989).