**In the Matter of Gary Steven COHEN, Attorney–Respondent.**

**No. 97SA211.**

Supreme Court of Colorado,
En Banc.

Sept. 13, 1999.

John S. Gleason, Attorney Regulation Counsel, James C. Coyle, Assistant Regulation Counsel, Denver, Colorado, Attorneys for Complainant.

Jean E. Dubofsky, Boulder, Colorado, Jay P.K. Kenney, Denver, Colorado, Attorneys for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline case, Gary Steven Cohen, was charged with representing conflicting interests. A hearing panel of the supreme court grievance committee approved the findings and conclusions of a hearing board, but modified the board's recommendation of a thirty-day suspension to ninety days. Cohen excepted to the recommendation of discipline. We accept the hearing panel's recommendation and order that the respondent be suspended for ninety days from the practice of law.

I.

Gary Steven Cohen has been licensed to practice law in Colorado since 1976. The facts underlying the complaint were hotly

contested and the evidence presented to the hearing board was in stark conflict. Following the hearing, the board made the following factual findings by clear and convincing evidence.

Cohen represented Thomas Mars and his businesses, Mars Steel & Iron and Mars Steel Corporation, in a number of legal matters from 1986 through 1990. Mars's son, Zane, was seriously injured in a motorcycle accident on July 4, 1985, when he collided with another vehicle. He sustained a closed-head injury and other injuries. Zane was twenty-one years old at the time of the accident. He was subsequently charged with a criminal offense. A lawyer other than Cohen initially represented Zane on the criminal charges and in a civil action brought against the driver of the other vehicle. In 1987, Cohen took over representing Zane in both cases. In the criminal case, Cohen filed a successful motion to suppress, resulting in the dismissal of the charges. He also obtained a substantial verdict on Zane's behalf in the civil case which was eventually settled on March 30, 1989 for $750,000.

At the time of the settlement, Zane was twenty-six years old, had graduated from high school, had quite limited business and financial experience, and was suffering from the effects of a closed head injury. Zane and his parents had discussions with Cohen prior to the settlement concerning the wisest way to resolve the matter and provide Zane with some protection and future security. Eventually it was decided to place the settlement proceeds in trust with Cohen as the trustee.

It is at this point that the parties started to disagree strongly. The complainant asserted that at about the time the settlement was entered into, the parties agreed orally to create an irrevocable spendthrift trust,[1] with Zane being the beneficiary and Cohen the trustee.

Cohen on the other hand alleges that no trust at all was created until the written trust agreement was entered into on August 28, 1989, because until that time Zane was ambivalent about whether he wanted a trust and the specific terms of the trust were not established until it was reduced to writing. According to Cohen, from the end of March to August, only a resulting trust existed, and Cohen's role was limited to being an agent responsible to the wishes of his principal, Zane.

The hearing board determined that the overwhelming weight of the evidence supported the complainant's position. "There is no question but that an oral irrevocable spendthrift trust was established on or about March 30, 1989, with Zane A. Mars as the beneficiary and Cohen as the trustee. First, Zane testified that it was his intent to create the trust when the case was settled. Second, the written agreement states that it "is made and entered into as of March 30, 1989." Third, while the first promissory note drawn by Cohen and executed by Zane's father on April 4, 1989 was originally made payable to Zane Mars, almost immediately the note was cancelled and rewritten in the name of "The Zane A. Mars Trust [hereafter "the Trust"] (Payee), Gary A. Cohen, Trustee."

In addition, subsequent promissory notes and a deed of trust referred to the Trust as the payee; Cohen's billing records beginning on March 31, 1989 charges his services to the "Z. Mars Trust"; the Trust Registration Statement refers to the trust as having been established on March 30, 1989; and Cohen obtained a tax identification number from the IRS for the trust. All of this occurred before the written trust agreement was executed on August 28, 1989. In his opening brief in this court, Cohen did not contest the board's finding that an oral spendthrift trust became effective on March 30, 1989.[2]

---

1. A "spendthrift trust" is " 'a trust created to provide a fund for the maintenance of the beneficiary, and at the same time to secure it against his improvidence or incapacity.' 65 C.J. 230." *Newell v. Tubbs,* 103 Colo. 224, 227, 84 P.2d 820, 821 (1938). In general, spendthrift trusts are valid and enforceable in Colorado. *See University Nat'l Bank v. Rhoadarmer,* 827 P.2d 561, 563 (Colo.App.1991).

2. Before the hearing board, neither the parties nor their expert trust witnesses raised or discussed the issue of whether a spendthrift trust in which the settlor is also the sole beneficiary was valid. Nor was the issue raised in the parties' original briefs to this court. After the case was submitted to the court, we sua sponte ordered the parties to address the issue of the Trust's validity and the effect on the board's finding and

Before Zane's settlement was reached, there were discussions between Zane and his father concerning Mars Steel Corporation borrowing some of the settlement proceeds on a short term basis. After Zane's case was settled and the oral spendthrift trust was created, Thomas Mars persuaded his son to approve or authorize a short term loan of $50,000 to the corporation. Thomas Mars believed at the time that he would be granted a Small Business Administration loan within a short period of time. The board found that Zane felt obligated to make the loan to his father because he had supported Zane during his convalescence and the ensuing litigation. Zane and his father asked Cohen to draft a promissory note and to release the funds to the father. The maker of the note was Mars Steel Corporation. The note was unsecured, although Thomas Mars signed a personal guarantee. This was the April 4, 1989 note that was redrafted to make the Trust the payee. When Cohen prepared the note, he was still representing Thomas Mars in his business matters. He was at the same time Zane's lawyer and the trustee of the Trust.

When the April 4, 1989 note came due, Thomas Mars's application for the SBA loan had still not been approved. In fact, it was never approved because of the corporation's poor financial circumstances. Neither the corporation nor Thomas Mars paid the note when it was due. Nevertheless, even though the first loan was in default, Cohen advanced another $44,000 of the Trust's funds to the Mars Steel Corporation. He did this at the direction of Zane and his father. Cohen also prepared a factoring agreement on Mars Steel Corporation's receivables as security for the second loan. Zane testified at the hearing that he was reluctant to approve the loan and he hoped that Cohen would deny it for him. Cohen's conflict of interest was further compounded by the fact that Thomas Mars now owed him substantial attorney fees. Before drafting the documents for the first and second loans, Cohen advised both the father and son that they should have independent counsel because of his attorney-client relationship with each of them. Neither Zane nor his father obtained an inde-

recommendation if the Trust was in fact invalid.

pendent lawyer, and Cohen drafted the notes and released the funds to Mars Steel Corporation and Thomas Mars.

About June 15, 1989, Zane told Cohen that his father was pressing him to make yet another loan from the Trust, this time for $100,000. The purpose of the loan was to pay off an IRS lien. The board found this to be a clear sign that the corporation was in severe financial trouble. Cohen told Zane to consult with another lawyer. At Zane's urging, Cohen arranged to get Zane a lawyer, who Zane said would be paid by his father. There was a lunch meeting among Zane, his father, Cohen, and the second lawyer. This lawyer did not review the documents or the details of the transaction, and Cohen knew this. Neither Cohen nor Thomas Mars provided the second lawyer with sufficient information about the financial condition of either the corporation or Thomas Mars for the lawyer to give Zane appropriate legal advice. The board concluded that Zane did not receive truly independent legal advice, and that Cohen either knew or should have known this. Nevertheless, Cohen drafted the necessary documents which involved obtaining a loan through the bank handling the Trust. As security for the bank loan, Cohen, as trustee for the Trust, executed an assignment of a $100,000 certificate of deposit owned by the Trust.

At the hearing, Cohen took the position that by drafting the promissory notes and other documents evidencing the transactions between Thomas Mars and Zane Mars and the Trust, he was simply acting as a scrivener, not a lawyer. The board found otherwise by clear and convincing evidence. First, Zane considered Cohen to be his lawyer from the outset. And the instruments themselves go well beyond the terms actually conveyed to Cohen by the parties to the transactions, "and clearly reflect [a] lawyer's input in the provisions."

Neither the corporation nor Zane's father repaid any of the notes. Eventually the corporation and Thomas Mars filed for bankruptcy. Cohen took no action whatsoever to collect on any of the notes or to foreclose on the collateral, such as it was. In 1994, how-

These issues are addressed below.

ever, Zane and the successor trustee of the Trust settled a malpractice action they brought against Cohen and the lawyer that was supposed to provide Zane with independent legal advice. The board concluded that Zane and the Trust were thereby "made whole."

The hearing board further determined that by simultaneously representing Thomas Mars and Mars Steel Corporation, as well as Zane and the Trust, Cohen violated DR 5–101(A) (accepting employment if the exercise of the lawyer's professional judgment will or reasonably may be affected by the lawyer's own financial, business, property, or personal interests); and DR 5–105(B) (continuing multiple employment even though the exercise of the lawyer's independent professional judgment will be, or is likely to be, affected by the representation of another client, or if the multiple employment is likely to involve the lawyer in representing differing interests). He also violated DR 1–102(A)(6) (engaging in conduct adversely reflecting on the lawyer's fitness to practice) and C.R.C.P. 241.6(2) (violating accepted rules or standards of legal ethics). The board found, however, that the complainant had not proven by clear and convincing evidence that Cohen had violated DR 6–101(A)(3) (neglecting a legal matter entrusted to the lawyer). According to the board, "It is not clear that at the time the defaults occurred any action to recover on the loans would have been successful."

## II.

The hearing panel generally approved the findings and conclusions of the hearing board, but modified the board's recommendation of a thirty-day suspension to a suspension for ninety days. Cohen filed exceptions to the panel's and board's recommendations.

As we mentioned above, the parties agreed that a valid spendthrift trust was created at some point; they differed only on when it came into being. After the case was at issue in this court, we ordered the parties to submit written briefs on the following issues:

Whether the Zane A. Mars Trust violates section 38–10–111 and/or public policy.

If the trust violates the statute and/or public policy, what is the effect on the existence of the trust.

If the Trust is invalid, what effect does this have on the Findings and Recommendation of the Hearing Board that found the Trust to be a valid oral spendthrift trust beginning March 1989.

■ The key issue litigated below was whether an oral spendthrift trust [3] was created in March 1989 or the trust came into being when it was put in writing in August 1989. Cohen and his expert witnesses testified that the trust only came into existence in August, whereas the complainant asserted that it began in March. The gravamen of the complaint was that Cohen as trustee breached the prudent investor rule by permitting the trust to lend a total of $200,000 between March and August to Zane's father's business, which was not repaid because the business failed. Cohen's position was that, until August 1989, he acted as the agent of his principal, Zane, in permitting Zane to loan his father the funds. Therefore, when he made the loans at issue (all before August 1989) he was merely acting as an agent obeying the orders of Zane, his principal. According to the argument Cohen presented to the hearing board, his actions were not unethical because they did not breach any duties relevant to a straight principal-agent relationship. The hearing board, however, found that an oral trust came into being in March so that Cohen should not have allowed the loans.

Apparently, the parties had no interest in questioning the validity of the *written* spendthrift trust. However, Restatement (Second) of Trusts § 156 (1959) states:

§ 156. Where the Settlor is a Beneficiary.

(1) Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.

---

3. Restatement (Second) of Trusts § 39 (1959) provides that "[e]xcept as otherwise provided by

statute, an enforceable trust can be created without a writing."

(2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee could pay to him or apply for his benefit.

As one commentator has stated:

Even in jurisdictions in which spendthrift trusts are permitted, the settlor cannot create a spendthrift trust for his own benefit. If the owner of property transfers it in trust to pay the income to himself for life or for a period of years, and provides that his interest under the trust shall not be assignable by him and that his creditors shall not be permitted to reach it, *nevertheless he can effectively assign his interest and his creditors can reach it.* It is immaterial that in creating the trust the settlor did not intend to defraud his creditors.... It is against public policy to permit a man to tie up his own property in such a way that he can still enjoy it but can prevent his creditors from reaching it.

William F. Fratcher, IIA *Scott on Trusts* § 156, at 164–67 (4th ed.1987) (emphasis added); *see also Hanson v. Minette*, 461 N.W.2d 592, 595 (Iowa 1990) ("While the trust contains spendthrift-type language, it is universally held that a settlor may not create a spendthrift trust in favor of himself."); *In re Johannes Trust*, 191 Mich.App. 514, 479 N.W.2d 25, 29 (1991) (concluding that the creditors could reach the assets of a "spendthrift" trust to the same extent as the maximum amount that would be payable to the beneficiary in the trustee's discretion); *Miller v. Ohio Dep't of Human Servs.*, 105 Ohio App.3d 539, 664 N.E.2d 619, 621 (1995) (self-settled spendthrift trusts are void as against public policy); *Farmers State Bank v. Janish*, 410 N.W.2d 188, 190 (S.D.1987) (spendthrift trust created by beneficiary and other parties out of sums they received in settlement of personal injury action was open to garnishment by beneficiary's creditors). Although there is language in the written trust that the settlors are Thomas Mars as next friend *and* Zane Mars, the evidence is clear (and Cohen so testified) that the real settlor was Zane alone. This very principle is embodied in the statutes of several states, including Colorado. Section 38–10–111, 10 C.R.S. (1997) provides:

**38–10–111. Trusts for use of grantor void against creditors.** All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels, or things in action, or real property, made in trust for the use of the person making the same *shall be void as against the creditors existing of such person.*

(Emphasis added.) In addition, the Restatement indicates that any attempt by the settlor-beneficiary to transfer, assign, or alienate the income or principal of the trust will be successful. *See* Restatement (Second) of Trusts § 156; IIA *Scott on Trusts, supra,* § 156, at 164–65.

In his supplemental brief, Cohen now argues that the oral spendthrift trust that he created violated both section 38–10–111 and public policy. With respect to section 38–10–111:

Zane's transfer of settlement proceeds into the oral irrevocable spendthrift trust, while reserving the beneficial interest to himself, would not protect the proceeds from his existing creditors. There is no indication in the record that Zane had any existing creditors at the time the settlement proceeds became subject to the oral trust.

Cohen assumes that section 38–10–111 only applies to creditors of the settlor-beneficiary at the time the trust is created. *See In re Baum*, 22 F.3d 1014, 1017 (10th Cir.1994) (construing section 38–10–111 to apply only to creditors existing at time trust was created). The complainant makes the same assumption, but concludes that while the trust may not be valid as to creditors, it is not thereby void. But even if there were no creditors at the time the trust was settled, the oral irrevocable spendthrift trust could not and did not protect the settlor-beneficiary from future creditors. *See* Restatement (Second) of Trusts § 156; IIA *Scott on Trusts, supra,* § 156, at 164–67. If we were to believe Cohen that he thought he was merely Zane's agent regarding the trust and therefore subject to Zane's orders regarding disposition of the proceeds, we would be forced to conclude that the Trust "was illusory and fraudulent" as against any creditors

of Zane. *See Kaladic v. Kaladic,* 41 Colo.App. 419, 422, 589 P.2d 502, 505 (1978). In *Kaladic,* eleven months before the wife filed a dissolution of marriage action, she established an irrevocable, discretionary, spendthrift trust because of what she viewed as excessive drinking by the husband and because of his statements indicating to her that he was financially irresponsible. *See id.* at 420, 589 P.2d at 504. The wife was the sole income beneficiary and her lawyer was the trustee. *See id.* The court of appeals held:

> Here, the conveyance of marital assets by the wife into an irrevocable, discretionary trust without her husband's knowledge was properly set aside by the trial court. It was illusory and fraudulent as against his rights. The trust assets were subject to division as marital property under § 14–10–113(1), C.R.S.1973, and the trustee held those assets as an equitable trustee.

*Id.* at 422, 589 P.2d at 505. Neither of the parties has argued that the spendthrift trust was set up as an illusion, a sham, or a fraud. We must therefore conclude, as did Zane and the hearing board, that when the oral trust was created, Cohen shouldered the duty of protecting Zane's assets from wasteful depletion, and the concomitant duty of exercising his own professional judgment as to the advisability of investments to be made by the Trust—for Zane's benefit. This duty prohibited Cohen from making ill-advised loans from the Trust for Zane's father's benefit or Cohen's own benefit. This was the duty that Cohen breached.

■ Therefore, whether the oral or written Trust was void ab initio is immaterial for disciplinary purposes and we do not reach that question. The important thing is that the board's findings mean that Cohen was required to protect Zane's financial interests and this he could not, and did not, do because of the conflicts of interest that existed when the oral trust was created. Thus, we agree with the hearing board that Cohen's conduct violated DR 5–101(A) (accepting employment when there is a conflict between the exercise of the lawyer's professional judgment and the lawyer's own financial, business, property, or personal interests); and DR 5–105(B) (continuing multiple employment when the exer-

cise of the lawyer's independent professional judgment will be, or is likely to be, affected by the representation of another client, or if the multiple employment is likely to involve the lawyer in representing differing interests).

■ The remaining issue is the proper level of disciplinary sanction. The hearing board recommended that Cohen be suspended for thirty days. The hearing panel modified the recommended period of suspension to ninety days "given that a thirty-day suspension was too lenient in light of the vulnerability of the respondent's client (the son); the imprudent investments (loans) to the other client (the father); and the heightened conflict created by the indebtedness (for attorney's fees) of the father to the respondent."

Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." ABA *Standards* 4.32.

In the way of mitigating factors, the board found that Cohen has not been previously disciplined, *see id.* at 9.32(a); he cooperated in these proceedings, *see id.* at 9.32(e); and he is held in high repute in the legal profession and the community, *see id.* at 9.32(g). The aggravating factors concern us, however. His conduct was motivated by a selfish purpose, *see id.* at 9.22(b); he did not, and still has not, actually acknowledged that his conduct was wrongful, *see id.* at 9.22(g); and he has remained insensitive to Zane's vulnerability.

In *In re Quiat,* 979 P.2d 1029 (Colo.1999), we suspended Quiat for three months for violating DR 5–101(B) (accepting employment if the lawyer knows that he or she will be called as a witness), DR 5–105(A) (accepting multiple employment involving conflicts of interest), and DR 5–105(B) (continuing multiple employment involving conflicts of interest). The conflicts in the *Quiat* case involved his simultaneous representation of a

debtor, the debtor's estranged wife, and the debtor's children in a bankruptcy. *See Quiat*, 979 P.2d at 1041–42. As in this case, at least a short period of suspension was appropriate. *See id.* at 1043. Although we considered a suspension for thirty days, we found it notable that "Quiat's failure to appreciate and understand the wrongfulness of his conduct mandate a longer suspension." *Id.* We suspended Quiat for three months. Cohen has similarly failed to appreciate the extent of his wrongful conduct. We therefore agree with the hearing panel that a ninety-day suspension is warranted.

## III.

Accordingly, we order that Gary Steven Cohen be suspended from the practice of law for ninety days, effective thirty days after the issuance of this opinion. We also order Cohen to pay the costs of this proceeding in the amount of $6,006.42 within ninety days after this opinion is announced to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432.

Justice BENDER does not participate.