In the Matter of the Estate of Marian
P. KLARNER, deceased,

Katz, Look & Moison, P.C., Arthur
L. Daley and Denis F. Daley,
co-trustees, Petitioners,

v.

Carol Shirley and Linda Turnwall,
Respondents.

No. 04SC214.

Supreme Court of Colorado,
En Banc.

June 6, 2005.

Ogborn, Summerlin & Ogborn, LLC, Michael Ogborn, Ricardo M. Barrera, LLC, Ricardo Barrera, Denver, for Petitioner.

Waller & Mark, P.C., William C. Waller, Jr., Greenwood Village, for Respondent.

KOURLIS, Justice.

Marian Klarner died on March 26, 2000 while she was the income beneficiary of a Qualified Terminable Interest Property ("QTIP") Trust established for her benefit by Albert Klarner at his death in 1982. Marian's gross estate, for federal and state estate tax purposes, included the QTIP Trust. Her Trustees sought to recover the estate taxes attributable to the QTIP Trust from that Trust. Two of the beneficiaries of the QTIP Trust objected. The Trustees then sought instruction from the probate court. The QTIP beneficiaries appealed the probate court's ruling to the court of appeals, which held that assessing any state estate taxes against the Trust was inappropriate. *In re Estate of Klarner*, 98 P.3d 892 (Colo.App. 2003).

We accepted certiorari on two issues [1]: whether the state estate taxes are properly apportioned against the QTIP Trust, and whether the QTIP beneficiaries are entitled

to attorneys' fees. The parties now agree that federal law requires the QTIP Trust to bear its portion of federal estate taxes. The question before us is whether the federal statute demands the same outcome with respect to state death taxes attributable to the inclusion of the QTIP Trust within the gross estate. We hold that section 2207A of the Internal Revenue Code governs the apportionment of all estate taxes, federal and state, arising from the inclusion of the QTIP Trust in the decedent's estate. Based upon such determination, we conclude that the language in the testamentary documents was insufficient to waive apportionment of either federal or state estate taxes. We further determine that the court of appeals erred in its award of attorneys' fees. We therefore reverse and remand the case to the probate court for further proceedings.

## I. Facts

Albert C. Klarner and Marian P. Klarner were married in Colorado. Albert and Marian did not have children from their marriage, but each of them had two children from their previous marriages. Albert had two daughters, Carol Shirley and Linda Turnwall ("Albert's daughters"), and Marian had two sons, Arthur L. Daley and Denis F. Daley ("Marian's sons").

In 1979 the law firm of Katz, Look & Moison, P.C., ("Law Firm") drafted a revocable living trust for Albert. The trust created a Marital Trust and a Family Trust upon Albert's death. In 1982 Albert amended the trust agreement, splitting the Marital Trust into two shares. The income from both Marital Trust shares was to be paid to Marian during her lifetime. Marian had the right to demand distribution of the full principal of the first share without limitation ("Marital Share One"). The second portion of the Marital Trust was to be poured into a QTIP Trust. Income from the QTIP Trust was payable to Marian during her life time. Contrary to Marital Share One, the QTIP Trust

1. The exact issues on which we granted certiorari are:
(1) Whether the court of appeals properly held that the decedent's estate could not recover from

the QTIP Trust a proportionate share of the state taxes paid by the estate.
(2) Whether the court of appeals properly awarded attorneys' fees in this case.

provided that the trustee could distribute only so much of the principal as the trustee, in his sole discretion, considered necessary for Marian's health, education, maintenance and support after taking into consideration the other assets available to her.

Albert had named Marian co-trustee of his entire trust. Absent exercise of the general power of appointment included in Marital Share One, all four children were equal residual beneficiaries of the Family Trust, Marital Share One and the QTIP Trust.

After Albert's death in 1982, Marian withdrew all assets from Marital Share One and placed them in her own trust ("Marian's Trust"). Marian renounced her interest in the Family Trust, which was equally distributed among the four children at that time. Marian reserved her rights under the QTIP Trust and continued to receive income payments until her death.

Before her death, Marian removed Albert's daughters as beneficiaries of her personal estate. She appointed her two sons and the Law Firm as co-trustees (collectively referred to as "the Trustees") of both Marian's Trust and the QTIP Trust.

Marian died in March 2000. Her taxable estate was valued at $5,039,315.52. The amount attributable to the inclusion of the QTIP Trust in her gross estate for tax purposes was $1,976,644.13. The estate paid estate taxes of $1,868,670.20, $323,203.34 of which was payable to Colorado.

In May 2000, the Trustees sent a letter to Albert's daughters informing them of the way in which the Trustees planned to apportion the payment of taxes and estate administration expenses. The Trustees proposed to apportion taxes and administrative expenses between the QTIP Trust and Marian's Trust by pro-rating them according to the amount that each trust represented with respect to the aggregate value of Marian's gross estate.[2] In support of that plan, the Trustees relied on language from Albert's Amended Trust, Marian's Last Will and Testament, Marian's Trust, and section 15–12–916(2), C.R.S. (2004).[3] At that time, the Trustees also prepared accountings and made partial distributions equally to all beneficiaries. Albert's daughters disputed the proposed allocation of taxes and administrative expenses against the QTIP Trust.

## II. Proceedings Below

As a result of the dispute, the Trustees filed a Petition for Instructions with the Denver Probate Court in March 2002. The Trustees sought guidance on the issues of: (1) whether the formula for apportionment, codified at section 15–12–916(2), was applicable and whether the Trustees had included the relevant assets of the Trust Estate in deriving the proposed method of apportionment; (2) whether the fees and expenses associated with the administration of the Trusts should be apportioned among all beneficiaries of the Trusts in the same proportion as the estate taxes; (3) whether the beneficiaries of certain assets that were owned by Marian, outright and free from the Trust, should be liable for contribution towards the payment of estate taxes and administrative expenses; and (4) whether the additional attorneys' fees associated with the Petition for Instruction should be borne by the estate as an administrative expense or by the beneficiaries who had challenged the Trustees' method of apportionment.

Albert's daughters responded, asserting that the testamentary instruments were clear and unambiguous in waiving apportionment of taxes[4]; that the Trustees had an inherent

---

2. The Trustees determined the QTIP Trust would be responsible for approximately 46% of taxes and administrative expenses and Marian's Trust would be responsible for the remaining 53%.

3. At the time of Marian's death and the Trustees' first accounting, section 15–12–916, 5 C.R.S. (2000), was in affect. Prior to the involvement of the probate court, subsection 5(e) of the statute was amended. See ch. 369, sec. 29, § 15–12–916, 2000 Colo. Sess. Laws 1837, 1846 (reference to Internal Revenue Code updated). The

statute was again amended subsequent to the probate court's order. See ch. 317, sec. 10, § 15–12–916, Colo. Sess. Laws 1354, 1360 (removing reference to repealed inheritance and succession tax). These amendments have not materially changed the import of the apportionment statute, thus, we cite to the provision currently in effect.

4. The daughters made two contentions: that the estate documents clearly required expenses and taxes to be paid "without apportionment and

conflict of interest; and that if section 15–12–916 applied, it applied to Marian's non-probate transfers as well.

In their reply, the Trustees raised section 2207A of the Internal Revenue Code, and its direction concerning apportionment.

Judge Stewart of the probate court, in an order dated June 2002, held that section 2207A of the Internal Revenue Code authorized Marian's estate to recover from the QTIP Trust the federal and state estate taxes accrued by the inclusion of the value of the QTIP Trust property in Marian's taxable estate. The court recognized that section 2207A allows the testator to waive the right of recovery but held that the language of Marian's estate documents was insufficient to indicate such intent.

The probate court held that, in Colorado, the language in the will or trust must refer specifically to the existence of the QTIP Trust and state the testator's intent that the right of recovery not be exercised against that asset. The probate court thus directed the Trustees to reimburse Marian's estate from the QTIP Trust in proportion to its percentage of Marian's gross estate pursuant to section 15–12–916.

The probate court denied both parties' requests for attorneys' fees. Albert's daughters filed a motion for reconsideration in which they took the position that section 2207A applied only to the recovery of federal taxes. The court denied that reconsideration motion and a motion to compel disclosure of documents. Albert's daughters appealed the decision to the court of appeals.

On appeal, the parties agreed that Marian's estate may recover federal estate taxes from the QTIP Trust pursuant to Internal Revenue Code section 2207A. However, they disagreed as to the calculation of that apportionment. The parties also disagreed as to whether the QTIP Trust was required to pay any portion of state estate taxes.

The court of appeals held that Marian's estate documents did not waive the right of recovery from the QTIP Trust for federal taxes. Accordingly, the court of appeals affirmed the probate court's order allowing Marian's estate to recover from the QTIP Trust the amount equal to the difference between the total *federal* tax against the estate and the amount payable if the QTIP Trust had not been included in the gross estate.[5] However, that court further held that section 2207A applies only to federal estate taxes and the apportionment of *state* death taxes is subject to section 15–12–916. The court opined that the language of Marian's Trust was sufficient, under the Colorado statute, to waive apportionment. Accordingly, the court of appeals reversed the probate court's order with respect to contribution of *state* taxes from the QTIP Trust. The court of appeals also concluded, as a matter of law, that Marian's sons and the Law Firm had a conflict of interest with respect to the QTIP Trust and remanded to the probate court to determine the appropriate remedy, including reasonable attorney fees and costs that should be awarded to Albert's daughters.

The case now comes before us on the issue of the apportionment of state estate taxes and the award of attorneys' fees against the Trustees.[6]

### III. Estate Taxes on Qualified Terminable Interest Property

Prior to 1981, the Internal Revenue Code allowed a maximum marital deduction of 50% of the value of the estate of the decedent where the surviving spouse was given control over the disposition of the marital property at the time of the first spouse's death. *See Estate of Clayton v. Comm'r*, 976 F.2d 1486, 1490–93 (5th Cir.1992). In response to the increasing divorce and remarriage rates, Congress became concerned with the difficulty of providing for a current spouse and

---

without reimbursement from any person" and that the document creating the QTIP Trust gave the Trustee discretion as to whether taxes should be paid from the trust upon Marian's death.

**5.** We agree with the court of appeals that the correct formula for apportionment is that em-

bodied in I.R.C. section 2207A, not section 15–12–916.

**6.** No issue regarding apportionment of administrative expenses is before us at this time.

children of a prior marriage. *Estate of Shelfer v. Comm'r*, 86 F.3d 1045, 1049 (11th Cir. 1996). To address this concern, the Internal Revenue Code was amended as part of the Economic Recovery Tax Act ("ERTA") of 1981. Pub.L. 97–34, 95 Stat. 172 (codified as amended in scattered sections of 26 U.S.C.). Internal Revenue Code Section 2056(b)(7)(B) created a qualified terminable interest property trust to allow a decedent to provide for a surviving spouse while controlling the ultimate disposition of the property after the surviving spouse's death. *See Shelfer*, 86 F.3d at 1049. Under ERTA, the QTIP Trust can be qualified, in whole or in part, for the marital deduction at the time of payment of the decedent's estate taxes. The value of the qualified property is deducted from the decedent's gross estate and no taxes are paid on it at the time of the decedent's death. I.R.C. § 2056(b)(7)(B)(v) (2005). Rather, the tax owed on the QTIP Trust is deferred until the death of the surviving spouse, when it is included within the surviving spouse's gross estate.[7] I.R.C. § 2044 (2005). To balance the tax burden caused by the inclusion of certain property within the gross estate of the last spouse to die, Congress granted the estate of the surviving spouse a right of recovery for taxes attributable to the inclusion of such property. *See* I.R.C. §§ 2206, 2207, 2208 (2005). The provision addressing taxes attributable to a QTIP Trust provides:

If any part of the gross estate consists of property the value of which is includible in the gross estate by reason of section 2044 (relating to certain property for which marital deduction was previously allowed), the decedent's estate shall be entitled to recover from the person receiving the property the amount by which-(A) the total tax under this chapter which has been paid, exceeds (B) the total tax under this chapter which would have been payable if the value of such property had not been included in the gross estate.

I.R.C. § 2207A. However, that provision shall not apply if "the decedent in his will (or a revocable trust) *specifically indicates intent to waive* any right of recovery under this subchapter with respect to such property." I.R.C. § 2207A(2) (emphasis added).

## IV. Statutory Language

In Colorado, section 15–12–916 governs the apportionment of estate taxes. Colorado's apportionment statute provides in pertinent part:

(2) Unless otherwise provided in the will or other dispositive instrument, the tax shall be apportioned among all persons interested in the estate, subject to the exceptions specified in this section. *The apportionment is to be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate.* The values used in determining the tax are to be used for tax apportionment purposes. In all instances not involving a spouse unprovided for in a will as provided in section 15–11–301 or an election by a surviving spouse as provided in section 15–11–201, *if the decedent's will or other dispositive instrument directs a method of apportionment of tax different from the method described in this code, the method described in the will or other dispositive instrument controls.* In instances involving such a spouse unprovided for in a will or election, if the decedent's will or other dispositive instrument directs a method of apportionment of tax different from the method described in this code, the apportionment of tax to the spouse unprovided for in the will or to the surviving spouse shall be in accordance with the method described in this code, and the apportionment of tax to the remaining persons interested in the estate shall be in accordance with the method described in the will or other dispositive instrument.

... (9) If the liabilities of persons interested in the estate as prescribed by this code differ from those which result under the

---

7. The Federal government imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. I.R.C. § 2001 (2005). The gross estate includes the value of all property, real or personal, tangible or intangible, at the time of the decedent's death as provided for under part III of chapter 11, title 26 of the United States Code. I.R.C.2031 (2005).

federal estate tax law, the liabilities imposed by the federal law shall control, and all other provisions of this code shall apply as if the amounts and liabilities prescribed by the federal law had been prescribed by subsection (2) of this section.

§ 15–12–916(a) (emphasis added).

Thus, the language of the Colorado statute differs from section 2207A in two material respects: first, it requires not that the decedent "specifically" indicate an intent to waive apportionment, but rather that the decedent merely "direct a method of apportionment different from that described in the statute;" and second, it imposes a different apportionment formula than that of section 2207A. Under 2207A, the estate may recover from the QTIP Trust the amount by which the total tax under Chapter 11 exceeds the total tax which would have been payable if such property had not been included. I.R.C. § 2207A. Under section 15–12–916 all beneficiaries of the estate, including those receiving assets under the QTIP Trust, share in the tax burden proportionately. The effect is that the taxes are apportioned on an "average" basis rather than requiring the QTIP Trust to bear all the incremental taxes resulting from its inclusion in the gross estate.

■ We must determine, as a matter of first impression in Colorado, which waiver provision prevails with respect to the apportionment of state estate taxes. For three reasons, we conclude that the federal provision should prevail—not only with respect to federal taxes, but with respect to state estate taxes as well.

First, we note that Colorado estate tax is generally parallel to and consistent with the federal estate tax. 3A Colo. Prac. § 102.25. The Colorado estate tax simply takes full advantage of the revenue-sharing mechanism provided by Internal Revenue Code section 2011(b). *See* § 39–23.5–103, C.R.S. (2004). The tax, by its nature neither imposes any tax where no federal tax is due nor imposes any additional death tax upon federally taxable estates. It simply shifts a portion of the tax payable to the Internal Revenue Service to the Colorado Department of Revenue. James R. Wade, Howard E. Parks, *Colorado Law of Wills, Trusts and Fiduciary Admin-*

*istration,* § 25 (CLE in Colorado, Inc.1996). Thus, Colorado statutes frequently refer to federal estate tax law. *See* 3A Colo. Prac. § 102.25 nt. 6. For example, "estate" and "tax" as used in the apportionment statute are both defined with reference to federal law. § 15–12–916(1)(a),(f). Hence, the statutes themselves embody a predisposition to construe section 15–12–916 as a harmonizing statute that renders Colorado law consistent with federal law. *See, e.g.,* § 39–23.5–101 et. seq., C.R.S. (2004). Had the general assembly intended Colorado's apportionment statute to create two different results—one for federal tax and one for state tax—it could have stated as such, and it did not. Rather, the apportionment statute provides that "if the liabilities of persons interested in the estate as prescribed by this code differ from those which result under the federal estate tax law, *the liabilities imposed by the federal law shall control.*" § 15–12–916(9) (emphasis added). Accordingly, we read section 15–12–916 as a coordinating statute.

Second, we conclude that Internal Revenue Code section 2207A should prevail under general principles of preemption. State law normally governs the devolution of property at death as well as the ultimate impact of death taxes. *Riggs v. Del Drago,* 317 U.S. 95, 97–98, 63 S.Ct. 109, 87 L.Ed. 106 (1942); Maurice T. Brunner, Annotation *Construction and Application of Statutes Apportioning or Prorating Estate Taxes,* 71 A.L.R.3d 247, 255 (1976). By its terms, section 15–12–916 applies to both federal and state estate taxes. However, where state and federal law govern the same matter, the applicability of the state statute is void to the extent that it conflicts with federal law. U.S. Const. art VI cl. 2; *see also Brubaker v. Board of County Comm'rs,* 652 P.2d 1050, 1055 (Colo.1982).

Here, compliance with section 15–12–916 would not necessarily satisfy the requirements of federal law. Hence, as Respondents here argue, the language in Marian's documents could be insufficient to waive apportionment for federal tax purposes, but sufficient for state tax purposes. Section 2207A indisputably preempts Colorado law with respect to the application of *federal* taxes. *Pac. Gas & Elec. Co. v. State Energy*

*Res. Conserv. & Dev. Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1147 (Colo.1997). In order to achieve the coordinating effect envisioned under the Colorado statutes themselves, we conclude that section 2207A preempts conflicting Colorado law, even as to state estate taxes.

Lastly, requiring a greater level of specificity in testamentary documents before finding the intent to exonerate a QTIP Trust from estate taxes is consistent with our case law. In construing section 15–12–916, the court of appeals has previously required that the intent to shift the burden of the estate tax must be clear and unambiguous. *In re Estate of Kelly,* 41 Colo.App. 316, 318, 584 P.2d 640, 641 (1978). The burden is upon the party contesting apportionment to establish that the testator intended a different outcome. *Id.*

Such a construction also comports with the majority view in other jurisdictions requiring reference to the QTIP property in tax apportionment clauses. *See, e.g., Estate of Vahlteich v. Comm'r,* 69 F.3d 537, 1995 WL 641318 (6th Cir.1995) (unpublished disposition) (finding that under Ohio law decedent's estate need not pay wife's QTIP trust taxes); *In re Will of Adair v. PNC Bank,* 149 N.J. 591, 695 A.2d 250 (1997) (under Florida law direction against apportionment must be clear and unequivocal, general pay-all taxes provision insufficient to exonerate QTIP); *In re Estate of Gordon,* 134 Misc.2d 247, 510 N.Y.S.2d 815 (N.Y.Sur.Ct.1986) (holding that federal and state law requires express mention of QTIP for valid waiver); *Branch Banking & Trust Co. v. Staples,* 120 N.C.App. 227, 461 S.E.2d 921 (1995) (applying apportionment statute and finding express direction for tax apportionment against QTIP).

The states deviating from the majority rule are among the few states that follow the common law burden-on-the-residue rule of non-apportionment. *See, e.g., Cleveland v. Compass Bank,* 652 So.2d 1134 (Ala.1994) (holding that 2207A preempts Alabama code with respect to federal estate taxes but burden-on-the-residue rule controls apportion-

ment of state estate taxes); *In re Will of Cooney,* 197 Wis.2d 484, 541 N.W.2d 467 (1995) (Wisconsin burden-on-the-residue rule yields to federal law only with respect to federal estate taxes); *In re Succession of Haydel,* 780 So.2d 1168 (La.App.2001) (residual estate held liable for state estate taxes included those assessed on QTIP property). We have no such common law presumption, and in fact, those cases clearly conflict with our presumption in favor of equitable apportionment.

Ultimately, the court of appeals in this case relied upon *In re Estate of Miller,* 230 Ill.App.3d 141, 172 Ill.Dec. 269, 595 N.E.2d 630 (1992) in deciding that section 15–12–916 prevailed with respect to the apportionment of state estate taxes. We note that in *Miller,* the Appellate Court of Illinois construed only federal law. In that case, the court held that section 2207A does not specifically require a testator to refer to the statute before an "otherwise" direction clause will be effective. *Miller,* 172 Ill.Dec. 269, 595 N.E.2d at 633. We are not persuaded that *Miller* should control our interpretation of section 15–12–916 where the parties have already conceded that Marian's will was insufficient to effectuate a waiver under federal law.

We now hold that the federal provision controls the apportionment of both federal and state estate taxes. The parties all concede that since Marian's testamentary documents made no mention of the QTIP Trust or reference to the estate's right of recovery pursuant to section 2207A, the language is insufficient to satisfy the mandate of section 2207A. *A fortiori,* because we have held that section 2207A controls the apportionment of state estate taxes as well, we need go no further in order to conclude that the language is insufficient to waive the right of recovery of state estate taxes. The QTIP Trust must bear its share of both federal and estate taxes, apportioned under the formula set forth in section 2207A.

## V. Attorneys' Fees

■ We now turn to the court of appeals' award of attorneys' fees. That award was based, first, upon a prevailing party theory,

and second upon a conflict of interest/breach of trust theory.

■ Colorado follows the traditional American Rule that, absent statutory authority, an express contractual provision, or a court rule, the parties in a lawsuit are required to bear their own legal expenses. *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo.1996). At the trial court level, Albert's daughters requested that, should they prevail, the court award "attorneys' fees and costs they have incurred redirecting their wayward Trustees to be charged as an administrative expense of the Marian Klarner Trust." Although they cited section 15–16–201(1), C.R.S. (2004), that provision does not provide for the award of attorneys fees to a prevailing party. Thus, there is no statutory basis for an award of *attorneys'* fees to either party.

The court of appeals, however, concluded that Albert's daughters should be granted attorney fees and costs associated with this litigation because they were required to correct the actions of the Trustees. The court of appeals opined that the exception expressed in *Heller v. First Nat'l Bank*, 657 P.2d 992, 999 (Colo.App.1982), is applicable here. We disagree.

■ First, a trustee is not liable for fees incurred in reliance on an order of the court even if that order is later vacated on appeal. *In re Trust of Franzen*, 955 P.2d 1018, 1023 (Colo.1998). Rather, where the trustee acts in good faith to seek direction from a court concerning its responsibilities in relation to a trust it oversees, the trustee is entitled to indemnification for any associated legal expenses. *Id.* Here, the trustees proposed a course of action to which the beneficiaries objected. The trustees then sought instruction from the probate court. Although the court of appeals found the probate court was in error, the litigation was initiated in good faith.

Second, to support an award for attorneys' fees under *Heller* the court must find that a breach of trust has occurred. This is a factual issue. The probate court did not reach it, and under those circumstances, we conclude that it was improper for the court of appeals

to do so. Hence, award of attorneys' fees on that basis was inappropriate.

Third, as a result of our ruling on the estate tax issue, Albert's daughters are no longer the prevailing party and therefore are not entitled attorneys' fees under the *Heller* exception.

As alternate grounds for fees, Albert's daughters argue the Colorado Rules of Civil Procedure support an award against the Trustees. The trial court has the authority to assess attorney fees against a party who has failed to obey an order to provide discovery. C.R.C.P. 37(b)(2). We reject this argument because, though the daughters sought an order to compel production in probate court, the motion was ruled moot and denied. The court of appeals affirmed the denial, and the propriety of that decision is not before this court. Without a valid court order to provide discovery, C.R.C.P. 37 does not apply.

Finally, Albert's daughters contend that the Trustees had a conflict of interest in administering the QTIP Trust. To challenge the propriety of Marian's sons and the Law Firm serving as trustees, the daughters should have petitioned for removal under section 15–1–1401, C.R.S. (2004).

■ A settlor has a great deal of discretion in designating a trustee. *Copley v. Copley*, 126 Cal.App.3d 248, 178 Cal.Rptr. 842, 847 (1981) (positions with obvious conflict of interests created and intended by trustor preserved as trustee intended). The law is settled that a trustee may be an interested party, such as a beneficiary or remainderman. *Lovett v. Peavy*, 253 Ga. 79, 316 S.E.2d 754, 757 (1984) (where antagonistic interests of trustee as remainderman known to settlor, error to remove trustee solely based on status as remainderman); *In re Luhrs Trust*, 443 N.W.2d 646 (S.D.1989); *see also Restatement (Second) of Trusts*, § 99 cmt. a (1959). Generally, the court will not remove a testamentary trustee absent a demonstrated abuse of power. *Copley*, 178 Cal.Rptr. at 866; *Culver v. Culver*, 112 Ohio App. 100, 169 N.E.2d 486 (1960) (so long as trustee executes trust in good faith and sound discretion, court has no right to interfere).

Here, despite the potential conflict of interest between his second wife and his biological children, Albert appointed Marian as a co-trustee of the QTIP Trust. He gave her authority to designate other parties as trustee and implicit authority to remove Albert's sons-in-law as trustee.

Although the court may more readily remove a trustee named by the court or a third party than one named by the settlor, the court must still have grounds for removal. *Restatement (Second) of Trusts* § 107 cmt. f illus. (1959). Mere friction between the trustees and beneficiaries is insufficient unless it interferes with the proper administration of the trust. *Restatement (Third) of Trusts* § 37 cmt. e(1) illus. 6, 7 (2003).

Albert's daughters claim that there is an actual conflict of interest pre-dating this action. However, nothing in the record indicates that they sought court intervention prior to the estate tax dispute. The proper apportionment of estate taxes and administration fees has created friction between the parties, but standing alone, it is insufficient as grounds for removal.[8]

## VI. Conclusion

We conclude that the federal and state estate taxes are to be apportioned under section 2207A. We reverse the court of appeals' conclusion that only federal estate taxes are subject to section 2207A. Lastly, we reverse the court of appeals' award of attorneys' fees. We remand the case to the probate court for apportionment of taxes, and for other proceedings consistent with this opinion.

---

8. We note that the Law Firm has a higher fiduciary duty as trustee than Marian's sons. Here, the Law Firm's role as drafting attorney and co-trustee of Marian's Trust and the QTIP Trust could raise questions—not before the court in this case—under the Colorado Rules of Professional Conduct 1.7 (a lawyer cannot represent a client if representation of that client will be directly adverse to another client). *See In re Cohen,* 8 P.3d 429 (Colo.1999) (attorney representing son in civil and criminal proceedings, father in business interests, and serving as trustee of son's spendthrift trust properly suspended for representing clients with conflicting interests); *see also People v. Cozier,* 74 P.3d 531 (Colo.2003) (attorney violated rules of professional conduct where he represented all heirs of estate individually and served as personal representative of estate).