[No. 58047-7-I. Division One. September 10, 2007.]

LARRY EDWIN EISENBACH, *Respondent*, v. STEPHEN F. SCHNEIDER ET AL., *Appellants*.

642

*Scott A.W. Johnson* and *RoseMary Reed* (of *Stokes Lawrence, PS*), for appellants.

*G. Michael Zeno, Jr.* (of *Zeno Drake & Hively, PS*) and *Howard M. Goodfriend* (of *Edwards Sieh Smith & Goodfriend, PS*), for respondent.

¶1 Cox, J. — Federal law controls the determination of the obligation to pay and the total amount of federal estate tax.[1] However, state law generally retains its traditional role of determining testamentary intent respecting the impact of the estate tax on beneficiaries and distribution of the estate.[2] Here, the settlors of the trust indenture at issue in this case clearly intended that the burden of paid estate taxes should be allocated pro rata between two funds described in the trust indenture. Neither the statutory right of recovery provision under the Internal Revenue Code[3] nor other law requires setting aside their clear expression of testamentary intent. We also conclude that the trial court properly exercised its discretion with respect to the other matters challenged on appeal with one minor exception.

¶2 Marvin and Martha Eisenbach, husband and wife, executed a restated indenture of trust dated August 1995 that named them as settlors and trustees. Their two sons, Larry and Roy, are among the named beneficiaries in the trust indenture.[4] They are also the principal parties to this appeal.

¶3 Marvin Eisenbach died testate in December 1997. Martha Eisenbach died testate in November 2002.

¶4 Following the death of Martha Eisenbach, Roy, as co-executor under her will, supervised the preparation and

---

[1] *Riggs v. Del Drago*, 317 U.S. 95, 63 S. Ct. 109, 87 L. Ed. 106 (1942).

[2] *Id.*

[3] 26 U.S.C. § 2207A(a).

[4] Because Roy Eisenbach and Larry Eisenbach share the same last name, we use their respective first names for clarity.

submission of federal estate tax returns as well as payment of the federal estate tax. He did so without permitting Larry, the other co-executor of her estate, to participate. The manner in which Roy allocated the estate tax burden between Larry and the other beneficiaries of certain trusts described in the trust indenture is a major issue in this case.

¶5 In late 2003, Larry retained counsel to assist him in obtaining more information about Martha Eisenbach's estate from her attorney, Stephen Schneider, and from Roy. Unsatisfied with the information he received, he commenced this lawsuit, asserting numerous claims against Schneider and Roy. Larry also sought, among other things, declaratory relief regarding the apportionment of estate taxes between two funds described in the 1995 trust indenture of the brothers' parents.

¶6 After a bench trial, the trial court concluded that Marvin and Martha Eisenbach clearly expressed their joint intent in the trust indenture that federal and state estate taxes be apportioned pro rata between two trusts described in the trust indenture. The court also concluded that they had effectively waived the application of the recovery provisions of 26 U.S.C. § 2207A. Thus, the court concluded that Roy's decision in administering Martha Eisenbach's estate to allocate the burden of estate taxes in accordance with the recovery provisions of the latter statute was incorrect. Accordingly, the court ordered a reallocation of the total estate tax burden to conform to the testamentary intent of the settlors, as set forth in their trust indenture. The court made other determinations that we shall discuss later in this opinion. Finally, the court awarded attorney fees pursuant to RCW 11.96A.150.

¶7 Roy appeals. Larry cross-appeals.[5]

---

[5] Schneider is not a party to this appeal because Roy abandoned those claims below.

## TESTAMENTARY INTENT

¶8 Roy argues that he properly allocated the estate tax burden pursuant to the provisions of 26 U.S.C. § 2207A after paying the full amount of estate taxes. He claims that the trial court erroneously adopted the pro rata allocation of the tax burden stated in the trust indenture of the settlors, Marvin and Martha Eisenbach. We hold that the trial court properly gave effect to the testamentary intent of the settlors, as expressed in the indenture of trust.

¶9 The primary issue is whether the provisions of § 2207A require the allocation of paid estate taxes according to the provisions of that statute rather than as stated in the trust indenture. That is a question of law that we review de novo.[6]

¶10 We start with the observation that it is undisputed that the full amounts of estate taxes have been paid, both for Martha Eisenbach's estate as well as for the estate of her deceased husband, Marvin Eisenbach, who predeceased her. The taxes for both estates were paid in 2003. Thus, we deal here with the allocation of the amount of paid estate taxes between two taxable trusts named in the indenture.

¶11 We also note that Roy does not assign error to most of the factual findings of the trial court. Accordingly, most of the findings are verities on appeal.[7]

### Estate Plan

¶12 In May 1979, Marvin and Martha Eisenbach established a trust indenture. In a document dated August 11, 1995, they amended the trust indenture by executing a restated indenture of trust. That document included an addendum A, listing assets that then constituted the corpus

---

[6] *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

[7] *In re Disciplinary Proceeding Against Longacre*, 155 Wn.2d 723, 735, 122 P.3d 710 (2005).

of the trust. Substantially all of the settlors' property was community property.

¶13 The restated trust indenture identified Roy and Larry as beneficiaries of the trust upon the death of the last surviving settlor. Annette Eisenbach, the wife of Roy, as well as their two children, were also beneficiaries. Annette and the children were to receive smaller percentages of the trust than either Larry or Roy.

¶14 The trust indenture provided that income from the trust estate was to be paid to Marvin and Martha Eisenbach during their joint lives. Upon the death of either of them, the indenture provided as follows:

> 1. The Trustee shall divide the trust estate into two parts, to be known as Fund A and Fund B. Fund A shall consist of the surviving Settlor's share of the community property. Fund B shall consist of the deceased Settlor's share of community property. Actual segregation of the property shall not be required unless the Trustee deems it advisable to do so.

The trust indenture further stated with respect to "Fund B" as follows:

> 3. Fund B shall be divided into two subshares, Subshare B-1 and Subshare B-2, as follows:
>
> (a) To Subshare B-1, there shall be allocated that portion of the assets of Share B as is equal to the exemption equivalent available for federal estate taxes in the year of Settlor's death. As used herein, the exemption equivalent is that amount which will result in a federal estate tax equal to the unified credit for the year of Settlor's death pursuant to Section 2010 of the Internal Revenue Code as it presently exists or as subsequently amended, and for which the state death tax credit is available pursuant to Section 2011 of the Internal Revenue Code as it presently exists or [as] subsequently amended (provided the use of this credit does not require an increase of the state death taxes paid). In funding Subshare B-1, the Trustee is instructed to take into consideration all property in which the deceased Settlor has an interest, including property passing outside the terms of this trust, and other provisions of this trust which do not qualify for the marital deduction. In the event that the

value of the property of Fund B allocated to Subshare B-1 is less than the amount of property which is subject to federal estate tax, and for which the state death tax credit is available, Subshare B-1 shall be comprised of such lesser amount.

(b) Subshare B-2 shall consist of the residue of Fund B, and shall be added to and transferred to Fund A to be held and administered as a part of Fund A, and shall constitute the property of the surviving Settlor. Notwithstanding anything herein to the contrary, the surviving Settlor shall have the right at his or her election, to disclaim all or any portion of Subshare B-2, and in the event of such disclaimer, the disclaimed portion of Subshare B-2 shall be added to and held as a part of Subshare B-1.

¶15 On December 5, 1997, Marvin Eisenbach predeceased Martha Eisenbach. Pursuant to the terms of the trust indenture, the trust estate was divided into two parts, known as "Fund A" and "Fund B." As the trust indenture further specifies, Marvin Eisenbach's one-half interest in the marital community's property was divided into two subshares, Subshare B-1 and Subshare B-2. The trustee allocated approximately $600,000 to the former subshare (the B-1 trust). The trustee also allocated approximately $1.6 million to the latter subshare (the B-2 trust or Qualified Terminable Interest Property (QTIP) trust). Pursuant to applicable law, the trustee deferred payment of estate taxes that otherwise would have been due upon Marvin Eisenbach's death.

¶16 Martha Eisenbach's one-half interest in the marital community's property became Fund A under the terms of the trust indenture upon her husband's death. The parties also refer to this fund as the "B-3 trust." The income from the B-3 trust was periodically distributed to her during her remaining lifetime.

¶17 Martha Eisenbach amended certain provisions of the trust indenture following her husband's death. In 2000, she amended the provisions of the trust indenture, reducing the percentages of her estate that Larry and Roy would receive on her death and increasing the percentages her grandchildren would receive.

¶18 The following year, she amended the trust again. After providing Larry an early distribution from her estate of $200,000, she modified the trust to provide the following distributions from her estate, the B-3 trust: 25 percent to Roy, 25 percent to Annette, and 50 percent to the trustee of the Eisenbach Education Irrevocable Trust for the benefit of their children. Thus, she effectively disinherited Larry from taking anything under her estate plan.

¶19 Martha Eisenbach died on November 26, 2002. Roy became trustee of the B-1 and B-2 trusts, which had been funded by Marvin Eisenbach's share of the marital community's property after his death in 1997. Roy also became trustee of the B-3 trust, which had been funded by Martha Eisenbach's share of the marital community's property upon Marvin's death.

*Estate Administration*

¶20 Under the terms of Martha Eisenbach's will, Larry and Roy are co-executors of her estate. Her will provides by its terms that her estate is to pour over to the trust, which is controlled by the terms of the trust indenture.

¶21 Larry and Roy liquidated the B-1 trust established in the trust indenture without conflict. Part of the income from the B-2 trust was the subject of a dispute that we describe later in this opinion.

¶22 The major dispute between Larry and Roy, however, concerns the allocation of the estate tax burden between Martha Eisenbach's estate (the B-3 trust) and the taxable portion of Marvin Eisenbach's estate (the B-2 trust). Specifically, we must determine the testamentary intent of Marvin and Martha Eisenbach. Should the estate tax burden be shared pro rata between these two trusts, or should another allocation control?

¶23 Roy assigns error to the trial court's finding that Marvin and Martha Eisenbach intended that "estate taxes be allocated pro rata." We hold that this finding is supported by substantial evidence in the record.

¶24 In construing a will or trust, testamentary intent controls.[8] Whenever possible, the intent of the settlors should be ascertained from the language of the instrument itself.[9] Testamentary intent is a question of fact.[10] We review whether substantial evidence supports the findings of fact.[11] " 'Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.' "[12]

¶25 Here, article VI of the indenture of trust states as follows:

> The Trustee shall pay out of principal, to the extent that this trust shall be included in the gross estate of either Settlor *for the purposes of determining federal estate taxes or Washington estate taxes, a ratable share of such taxes determined by the proportion which the taxable portion of the trust estate bears to the net taxable estate of the Settlor* (after exemptions and deductions are taken) as determined for estate tax purposes by the authority assessing the tax.[13]

¶26 The above language plainly and unambiguously expresses the joint intent of the settlors, Marvin and Martha Eisenbach, that estate taxes shall be paid "ratably" among the taxable portions of the trust. While the trust indenture was amended in other ways before and after the death of Marvin Eisenbach, this provision for the pro rata payment of estate taxes remained unchanged.

¶27 We note that addendum A to the indenture trust is consistent with our reading that estate taxes are to be

---

[8] *In re Estate of Griffen*, 86 Wn.2d 223, 226, 543 P.2d 245 (1975).

[9] *Id.*

[10] *In re Estate of Soesbe*, 58 Wn.2d 634, 636, 364 P.2d 507 (1961).

[11] *Lewis v. Estate of Lewis*, 45 Wn. App. 387, 389, 725 P.2d 644 (1986).

[12] *Id.* (quoting *Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 701 P.2d 1114 (1985)).

[13] (Emphasis added.)

shared pro rata between the taxable portions of the trust.[14] For example, exhibit 9 at trial shows a listing of the then assets in the trust, estimated taxes, and tentative distributive shares to Larry, Roy, and the other beneficiaries. The amounts of the estimated distributive shares are most consistent with a pro rata allocation of estate taxes, as the language of the indenture trust specifies.

¶28 Notwithstanding the clear and unambiguous directive in the trust indenture to allocate the estate taxes pro rata between the B-2 trust and the B-3 trust, Roy elected to allocate the paid estate taxes between the trusts in a different manner. Specifically, he elected to apply 26 U.S.C. § 2207A, which permits a right of recovery to a decedent's estate in certain circumstances.

### 26 U.S.C. § 2207A

¶29 Roy contends the trial court failed to correctly apply this provision in this case, thereby directing an incorrect allocation of the paid estate taxes between the B-2 and B-3 trusts. Specifically, he argues that Martha Eisenbach's estate, the B-3 trust, has a right of recovery against the B-2 trust, the taxable portion of Marvin's estate, to the extent of the amount of estate taxes her estate paid based on the value of Marvin's B-2 trust included in her estate. We disagree.

¶30 In 1981, the Internal Revenue Code was amended as part of the Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, 95 Stat. 172, to extend the marital deduction to property in QTIP trusts.[15] A QTIP trust gives

---

[14] The indenture of trust provides that "In order to reduce any possible dissention between the beneficiaries an Addendum A has been prepared which lists all the settlors' assets and allocates some specific assets to specific beneficiaries. This Addendum will be maintained reasonably current during the life of both settlors. The last dated Addendum A. attached hereto and signed by the last living settlor, shall be used as a guide in allocating the assets in accordance with the percentages specified." Exhibit 9 is an addendum A dated June 5, 1996, and is signed by both settlors.

[15] *See* 26 U.S.C. § 2056(b)(7).

a surviving spouse all of the income from the trust property during his or her life. Upon the surviving spouse's death, the remaining assets are distributed to remainder beneficiaries originally named in the trust instrument. The election of QTIP treatment under 26 U.S.C. § 2056(b)(7) allows the surviving spouse, by means of a marital deduction taken by the testator's estate, to defer payment of the federal estate taxes until the surviving spouse's death.[16] Upon the surviving spouse's death, the QTIP trust is included in the survivor's estate for taxation purposes.[17] However, the survivor's estate is entitled to recover from the QTIP remainder beneficiaries the federal estate taxes attributable to the QTIP trust, unless the decedent directs otherwise.[18]

¶31 26 U.S.C. § 2207A(a), which was last amended in 1997, currently provides:

**(a) Recovery with respect to estate tax**

**(1) In general**

If any part of the gross estate consists of property the value of which is includible in the gross estate by reason of section 2044 (relating to certain property for which marital deduction was previously allowed), the decedent's estate shall be entitled to recover from the person receiving the property the amount by which—

(A) the total tax under this chapter which has been paid, exceeds

(B) the total tax under this chapter which would have been payable if the value of such property had not been included in the gross estate.

**(2) *Decedent may otherwise direct***

Paragraph (1) shall not apply with respect to any property to the extent that the decedent in his will (or a revocable trust) ***specifically indicates an intent to waive any right***

---

[16] *In re Marital Trust Created under Will of Cooney*, 197 Wis. 2d 484, 493, 541 N.W.2d 467 (1995).

[17] 26 U.S.C. § 2044.

[18] 26 U.S.C. § 2207A(a).

*of recovery under this subchapter with respect to such property.*[19]

¶32  Article VI of the trust indenture before us provides that the federal and state estate taxes should be apportioned pro rata:

A. The Trustee shall pay out of principal, to the extent that this trust shall be included in the gross estate of either Settlor *for the purposes of determining federal estate taxes or Washington estate taxes, a ratable share of such taxes determined by the proportion which the taxable portion of the trust estate bears to the net taxable estate of the Settlor* (after exemptions and deductions are taken) as determined for estate tax purposes by the authority assessing the tax.[20]

¶33  As we have discussed earlier in this opinion, the trial court correctly found that Marvin and Martha Eisenbach intended that estate taxes be apportioned pro rata. Thus, the issue is whether § 2207A requires a different allocation. We hold that it does not.

¶34  The Congressional committee reports for the 1997 amendment provide that "the right of recovery with respect to QTIP is waived only to the extent that language in the decedent's will or revocable trust specifically so indicates (e.g., by a specific reference to QTIP, the QTIP trust, [26 U.S.C.] section 2044, or section 2207A)."[21] The report also states that a general provision specifying that all taxes be paid by the estate is no longer sufficient to waive the right of recovery.[22] Roy relies on these reports to argue that because his parents did not specifically refer to § 2207A or the QTIP trust in the trust indenture, they did not effectively waive § 2207A.

---

[19] (Some emphasis added.) The 1997 amendment applies to the estates of decedents dying after the August 5, 1997 date of enactment of the amendment. Pub. L. No. 105-34, § 1302(a), 111 Stat. 1039 (1997).

[20] (Emphasis added.)

[21] H.R. Rep. No. 105-148, at 614 (1997).

[22] *Id.*

¶35 The trial court rejected this argument, concluded that the Eisenbachs' intent is clear, and stated:

To interpret Section 2207A to override the testators' intent because they failed to use magic words enacted after their testamentary documents had been drafted and signed would constitute a broad reach for a federal statute, especially where the federal government has nothing to gain from the interpretation.[23]

¶36 The court reasoned that the Internal Revenue Service does not care how estate taxes are apportioned as long as the total amount of tax paid is correct. Further, the court relied on *Riggs v. Del Drago*, in which the United States Supreme Court held that apportionment of federal estate taxes is a matter of state law.[24] We agree.

¶37 In *Riggs*, the Supreme Court held that in the absence of congressional enactments to the contrary, state law governs the allocation of the burden of estate taxes.[25] In Washington, testamentary intent controls the construction of a will or trust.[26]

¶38 Congress amended § 2207A to require a settlor to specifically waive recovery, reasoning that "persons utilizing standard testamentary language often inadvertently waive the right of recovery with respect to QTIP."[27] Congress attempted to avoid this confusion by requiring specific reference to the Internal Revenue Code section or the QTIP. The amendment was to ensure that the testator's intent effectively controlled. Nowhere in the legislation or in its legislative history is there any suggestion that a clear statement of testamentary intent regarding the allocation of the tax burden is to be displaced by the provisions of the statute.

---

[23] Clerk's Papers at 346 (Conclusion of Law 24).

[24] Clerk's Papers at 346 (Conclusion of Law 22) (citing *Riggs v. Del Drago*, 317 U.S. 95, 63 S. Ct. 109, 87 L. Ed. 106 (1942)).

[25] *Riggs*, 317 U.S. 95.

[26] *Griffen*, 86 Wn.2d at 226-27.

[27] H.R. Rep. No. 105-148, at 614 (1997).

¶39 Here, it is clear that the Eisenbachs intended that their estate taxes be apportioned pro rata. The trust indenture is unambiguous in this respect. Because testamentary intent controls the apportionment of the burden of federal and state estate taxes, and the Eisenbachs jointly agreed that estates taxes were to be apportioned pro rata, we conclude that the trial court properly directed allocation of the estate taxes in that manner.

¶40 Roy relies on several cases to support his argument to overturn the clear testamentary intent of the settlors that is stated in the trust indenture. All are distinguishable. In short, the cases that concluded that the testator did not sufficiently waive reimbursement under § 2207A all contained general pay-all-taxes clauses and involved the former version of the statute. Unlike this case, they did not involve a specific statement of intent directing pro rata allocation of estate taxes and did not involve the current version of the statute.

¶41 *In re Estate of Klarner*[28] is the only case Roy relies on that involved the current statute. However, there, the parties agreed that § 2207A applied to federal estate taxes. The issue was whether § 2207A preempted the Colorado statute that governed the apportionment of state estate taxes.[29] The court held that § 2207A preempted conflicting Colorado law with respect to state taxes, and the parties conceded that the testamentary language was insufficient to waive § 2207A.[30] Because our state statute governing apportionment of estate taxes is not at issue, *Klarner* does not apply.

¶42 In *In re Marital Trust Created under Will of Cooney*, the decedent's will contained a general pay-all-taxes clause.[31] It did not reference the QTIP trust or the federal

---

[28] 113 P.3d 150 (Colo. 2005).

[29] *Id.* at 153.

[30] *Id.* at 156.

[31] 197 Wis. 2d 484, 490, 541 N.W.2d 467 (1995).

reimbursement statutes.[32] The Wisconsin Supreme Court held that the testator did not sufficiently waive reimbursement under former § 2207A (1981) because the will contained a general tax clause provision, which was insufficient to shift the tax burden from the QTIP remainder beneficiaries to the decedent's estate.[33] The court followed the reasoning of New York's court in *In re Estate of Gordon*, which held that a general tax clause was insufficient to waive former § 2207A (1981) reimbursement.[34] The *Gordon* court reasoned that there is a presumption that testators do not intend to apply a general tax exoneration clause to QTIP property, and if applied in that case, it would have totally eliminated the decedent's residuary gift to charity.[35] The court noted that nothing in the decedent's will evidenced a clear intent to do so.

¶43 Similarly, in *Cooney*, the court noted that if the QTIP beneficiaries were exonerated from paying taxes, no funds would remain in the decedent's residuary estate to satisfy her specific bequests to family and charity.[36] The court reasoned that the will revealed no intent to benefit her husband's remainder beneficiaries at this expense.[37]

¶44 In *In re Estate of Kramer*, the New York Supreme Court similarly held that the general tax clause stating that taxes were to be paid from the residuary estate was insufficient to waive former § 2207A.[38]

¶45 In contrast here, the Eisenbachs did not have a general pay-all-taxes clause in the trust. Rather, they specifically stated that taxes shall be apportioned pro rata.

---

[32] *Id.*

[33] *Id.* at 504.

[34] *Id.* at 500 (relying on *In re Estate of Gordon*, 134 Misc. 2d 247, 252, 510 N.Y.S.2d 815 (1986)).

[35] *Gordon*, 134 Misc. 2d at 252.

[36] 197 Wis. 2d at 504.

[37] *Id.*

[38] 203 A.D.2d 78, 79, 610 N.Y.S.2d 31 (1994).

They also incorporated an addendum to the trust indenture, which further shows their intent to apportion the taxes pro rata.

¶46 Roy argues that in 2001, Martha Eisenbach amended article I, section D of the trust indenture entirely, including all references to addendum A, and replaced it with a new paragraph that made no reference to an addendum. He asserts that in doing this, she revoked the addendum and it can no longer be considered.

¶47 Although Martha Eisenbach amended the language of section D, which referred to the addendum, the tax provision located in article VI, section A was never amended. In any event, Martha could validly amend only the distribution of her one-half of the community property, the B-3 trust. She could not validly amend the distribution of Marvin Eisenbach's one-half of the community property, the B-1 and B-2 trusts.

¶48 In short, even without the addendum, the trust indenture clearly states that the Eisenbachs intended that the estate taxes be apportioned pro rata, and this language was never modified.

¶49 Roy also argues that a private letter ruling in another case supports his position. We make two observations in response. First, by it terms, the ruling expressly states, "This ruling is directed only to the taxpayer requesting it." Section 6110(k)(3) of the Internal Revenue Code provides that the private letter ruling may not be used or cited as precedent. Second, in any event, we see nothing in the facts or law stated in the ruling that affects our disposition of this case.

¶50 Next, Roy argues that § 2207A preempts our state statute, which governs the apportionment of estate taxes. This argument is unpersuasive.

¶51 The trial court ordered the estate taxes to be apportioned pro rata pursuant to the Eisenbachs' testamentary intent, as expressed in the trust indenture. Thus, our state statute is not relevant to the question of apportionment.

¶52 Roy argues that RCW 83.110A.090, which addresses coordination of state and federal law in certain circumstances, should nullify the clear testamentary intent of the Eisenbachs that we have discussed. This statute states as follows:

**Right of reimbursement.** (1) A person required under RCW 83.110A.080 to pay an estate tax greater than the amount due from the person under RCW 83.110A.020 or 83.110A.030 has a right to reimbursement from another person to the extent that the other person has not paid the tax required by RCW 83.110A.020 or 83.110A.030 and a right to reimbursement ratably from other persons to the extent that each has not contributed a portion of the amount collected under RCW 83.110A.080(2).

(2) A fiduciary may enforce the right of reimbursement under subsection (1) of this section on behalf of the person that is entitled to the reimbursement and shall take reasonable steps to do so if requested by the person.

¶53 Roy argues "liabilities of persons interested in the estate" differ here under RCW 83.110A.020 and 26 U.S.C. § 2207A. According to him, this mandates application of the latter statutes, which directly conflicts with the Eisenbachs' testamentary intent for payment of taxes.

¶54 We do not read the statute to support such a remarkable result. Rather, it is the testamentary intent of the Eisenbachs, as expressed in the documents we have discussed, that control.

¶55 Roy also argues that the trial court's ruling harms Martha's beneficiaries and benefits Marvin's. However, both Eisenbachs jointly intended to allocate the estate taxes pro rata, as the trust indenture specifies. Theoretical harm to beneficiaries of one of the settlors is not a basis for upsetting their clear statement of testamentary intent.

¶56 Roy further argues that the trial court miscalculated the apportionment of taxes because it did not take into account the tax exempt portion of Martha Eisenbach's estate. We decline to address this argument due to insuffi-

cient argument and failure to support the argument with relevant citations to the record.[39]

¶57 Finally, Roy argues that the trial court's ruling could expose Martha Eisenbach's beneficiaries to federal gift tax liability. This argument is speculative and does not change our analysis.

¶58 We affirm the trial court's judgment to the extent it allocated the state and federal estate taxes pro rata.

¶59 The remaining issues of this opinion are not of precedential importance. Accordingly, pursuant to RCW 2.06.040, the remainder of this opinion is unpublished.

SCHINDLER, A.C.J., and BAKER, J., concur.

After modification, further reconsideration denied October 16, 2007.

---

[39] *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we will not review an argument absent any reference to the record or citation to authority).