Matter of Townson (2025 NY Slip Op 25072)

[*1]

Matter of Townson

2025 NY Slip Op 25072

Decided on March 24, 2025

Surrogate's Court, Monroe County

Ciaccio, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 24, 2025
Surrogate's Court, Monroe County

In the Matter of the Petition of Lisa Townson, Beneficiary of the Estate of Ann K. Townson, Under SCPA 1420 for the Construction of the Last Will and Testament of Ann K. Townson.

File No. 2023-2642/B

Aaron E. Connor, Esq. and Verley A. Brown, Esq., Pierro, Connor & Strauss, LLC, Latham, New York, Attorneys for Lisa Townson, Petitioner. 
Anthony J. Adams, Esq. and Mallory K. Smith. Esq., Adams Leclair LLP, Rochester, New York, Attorneys for James S. Reed, as Executor of the Estate of Ann K. Townson, Respondent.
Svetlana K. Ivy, Esq., Lippes Mathias LLP, Rochester, New York, Attorneys for JPMorgan Chase Bank, N.A., as Co-Trustee, Respondent.

Christopher S. Ciaccio, S.

The issue, brought to the Court as a will construction proceeding pursuant to SCPA §1420(1), is whether the estate's fiduciary may apportion estate taxes across the residuary estate and QTIP trusts, where language in the Will directing the taxes to be paid from solely the "residuary estate" lacks specific reference to statutory language authorizing tax apportionment or the QTIP trusts.
Facts
The facts are uncomplicated and not the subject of any dispute. 
Petitioners Lisa C. Townson ("Lisa") and Winslow W. Townson ("Winslow") are the biological children of Schuyler C. Townson ("Schuyler"). They are remainder beneficiaries of two Qualified Terminable Property ("QTIP") trusts established pursuant to their father's Will.
The Respondents are James S. Reed as the executor of the estate of his mother Ann [*2]Townson, Schuyler's wife. Schuyler died in 1994, survived by his wife Ann and by his children Lisa and Winslow. Ann was not the mother of Lisa and Winslow. JPMorgan Chase is also a respondent, as co-trustee of the QTIP trusts.
Schuyler's Will was drafted by attorney Ralph J. Code, III, and provided that the two trusts were to be established for the benefit of his wife Ann, and for the benefit of his children Lisa and Winslow, and partially for the benefit of Ann's four biological children. 
Of the two QTIP trusts, both established after Schuyler's death by an election on the estate's Federal Estate tax return, one was a "GST-Exempt" QTIP trust and was funded with $1,000,000.00. The remainder beneficiaries of that trust are Lisa and Winslow, in equal shares.
The second trust, a "non-GST" QTIP trust, was funded with $8,782465.11. The remainder beneficiaries of the non-GST QTIP trust are Lisa Townson (one-third), Winslow Townson (one-third), and Ann's four biological children (collectively one-third). 
Schuyler's Will named his wife Ann and Chase Lincoln Bank N.A. (predecessor to JP Morgan Bank) as co-trustees of both QTIP trusts. From 1994 to September 2023, she collected all income from the trusts.
In 2022 attorney Ralph J. Code, III drafted Ann an updated Will, which she executed on September 2, 2023. She included in the Will a clause apportioning the taxes to be paid upon her death as between her estate and the QTIP trusts. It reads as follows:
"I direct that my Executor pay out my residuary estate, without apportionment, all estate inheritance and like taxes imposed by the government of the United States, or any state or territory thereof, or by any foreign government or political subdivision thereof, in respect to all property required to be included in my gross estate for estate or like tax purposes by any such governments, whether the property passes under this Will or otherwise, without contribution by any recipient of any such property"
(emphasis added).
Ann died in September 2023. She was survived by son James S. Reed (the executor of her estate) and his siblings, all Ann's biological children from a prior marriage.
James, as executor of the estate, retained attorney Code to represent the estate. In December 2023, Code sent a memorandum directing the trustee of the QTIP trusts to pay over 4 million dollars in federal and state taxes then due, notwithstanding the language in the Will regarding tax apportionment.
This will construction proceeding followed. The children of Schuyler seek to have Ann's biological children, the beneficiaries of her residuary estate, pay the entire tax burden incurred by the estate and the trusts.
Analysis
Apportionment of an estate's state and federal tax burden as between the residuary estate and marital deduction trusts is the favored outcome and the preferred policy choice (see Matter of Priedits, 132 AD3d 769, 770-71 [2d Dept 2015], citing Matter of Shubert, 10 NY2d 461, 471 [1962]). 
New York Estate, Powers and Trusts Law ("EPTL") § 2-1.8 (d-1) (1) (A) provides that the estate is "entitled" to apportion the state tax burden between the residuary estate and the [*3]marital deduction trusts ("QTIP" trusts), but not "if the decedent specifically directs otherwise by will" (EPTL § 2-1.8 [d-1] [1] [B] [emphasis added]).
Similarly, the Internal Revenue Code ("IRC") § 2207A (a) (1) provides that the "decedent's estate shall be entitled (emphasis added) to recover" from the QTIP trusts taxes attributable to the assets in the trusts but "may otherwise direct" if the decedent in his Will "specifically indicates an intent to waive any right of recovery under this subchapter with respect to such property" (IRC § 2207 [a] [2]).
As noted by counsel for JPMorgan, the House of Representatives Report accompanying the amendment of IRC § 2207A in 1997 states that "The bill provides that the right of recovery with respect to QTIP is waived only to the extent that language in the decedent's will or revocable trust specifically so indicates (e.g., by a specific reference to QTIP, the QTIP trust, section 2044, or section 2207A)" and that " . . . a general provision specifying that all taxes be paid by the estate is no longer sufficient to waive the right of recovery (HR Rep 105-148, 613-614 [1997]).
"Specifically," has been held to mean an express reference to the QTIP trusts or to the provisions of the Code and/or the EPTL referenced above.
In Matter of Honig (Kirsch), Surrogate Pettit held that the language in the decedent's will directing taxes to be paid from "the principal of such trust, or trusts, as applicable, holding such assets, in the manner provided by law" (emphasis added), was not specific enough to waive the "tax obligation attributable to the Sub-Trusts for which a marital deduction was previously taken by decedent" (72 Misc 3d 823, 840 (Sur Ct, Albany County 2021)
Prior to August 5, 1997, Internal Revenue Code § 2207A (a) (2) provided for apportionment unless "the decedent otherwise directs by will." Cases decided under this decidedly less-specific language also held that reference to the QTIP trusts of the statutory provisions was required to waive tax apportionment.
In Matter of Gordon Surrogate Renee Roth, the (then and now) much-respected authority on all matters trust and estate, held, in a case of first impression following the passage of the federal Economic Recovery Act of 1986 that created marital deduction trusts, that a tax exoneration clause that did not specifically mention the QTIP trusts failed to exclude the trusts from their share of the estate tax burden. "The basis for requiring express mention of a QTIP trust is the presumption that most testators do not intend to apply a general tax exoneration clause to QTIP property" (Matter of Estate of Gordon, 134 Misc 2d 247, 252 [Sur Ct, New York County 1986]).
She noted as well that the New York State Legislature had followed the lead of Congress and amended EPTL 2-1.8. "The recent amendment of EPTL 2—1.8 . . . is a similar attempt to protect the testator's presumed intent and prevent inadvertent alterations of tax apportionment clauses" (Matter of Gordon, 134 Misc 2d at 252).
In Matter of Kramer, the court, affirming a decision also by Surrogate Roth, declined to give effect to a tax exoneration clause because it failed to reference the QTIP trusts in question (Matter of Kramer, 203 AD2d 78, 79 [1st Dept 1994]).
The issue here then, is whether the language in Decedent's Will regarding tax apportionment is "specific" enough to comply with the statutory requirement of a specific direction found in EPTL § 2-1.8 (d-1) (1) (A), and a specific "indication of intent" (Internal Revenue Code § 2207A (a) (1).
It is not. Where a waiver of apportionment against a QTIP trust is sought, EPTL § 2-[*4]1.8(d-1) (1) (A) and Internal Revenue Code § 2207A (a) (2) govern the result and mandate strict compliance with the direction to "specifically direct otherwise."
The failure in a will or trust to specifically refer to the QTIP trusts (and/or the Code and/or EPTL sections) leaves the fiduciary of the estate the authority and the right - the entitlement, to use the statutory language - to seek contribution from the trusts for the payment of taxes. The language in decedent Ann Townson's Will is "one of the formbook examples of tax exoneration clauses that evolved before there were QTIPs. The post-ERTA draftsman, on the other hand, is advised to use totally different language to apportion QTIP taxes" (Matter of Gordon, 134 Misc 2d at 252).
Where the will or trust lacks the language (perhaps not explicitly but certainly as implicitly as can be) required by the statutes, the intent of the testator is not the primary issue. The determinative factor is whether the tax exoneration clause references the QTIP trusts and/or the statutory language by which the QTIP trusts were created. 
To the extent that intent is an issue at all, courts have considered whether directing that the residuary estate pay the entire tax would result in an obvious inequity.
Thus, in Kramer the court pointedly referred to the fact that tax exoneration would result in less money flowing to the testator's own natural daughter. In Gordon the court acknowledged that tax exoneration would "totally wipe out" the charitable bequest in the residuary estate. 
In Matter of Patouillet, in a case involving a non-testamentary disposition under EPTL 2—1.8 (d) (2), Surrogate Wells held that petitioner's assertions in their will construction proceeding would "result in the decedent's sisters receiving nothing," and that he was "[c]ertain it is that decedent did not intend to draw a meaningless dispositive document to mock her beneficiaries" (internal quotation and citation omitted) (Matter of Patouillet, 158 Misc 2d 473, 477 [Sur Ct, Onondaga County 1993], affd 207 AD2d 1043 [4th Dept 1994]).
Here, if the trusts were exonerated from paying any of the tax, Ann's biological children, the beneficiaries of the residual estate, would have to pay an increased amount of tax, thus negatively impacting "the natural objects of her bounty" (Matter of Weltz, 16 AD3d 428, 429 [2d Dept 2005]), something she was not likely to do[FN1]
.
Petitioners argue that no "magic words" are required to give effect to the tax exoneration clause exempting the QTIP trusts from any of the tax burden. The intent of the testator is dispositive, they argue, and they cite among other cases to Matter of Priedits (132 AD3d 769, 770-71 [2d Dept 2015]) and Eisenbach v. Schneider (140 Wash. App. 641, 655 [2007] [employing the "magic words" metaphor]).
However, Priedits is inapplicable, as it involves a wife's elective share, not a QTIP trust. The case was governed by EPTL 2-1.8 (c), which states all estate tax payments must be equitably apportioned among recipients of estate assets "[u]nless otherwise provided in the will or non-testamentary instrument (EPTL 2—1.8 [c] )"
The phrase "otherwise provided" is not the same as "decedent specifically directs otherwise by will" (EPTL § 2-1.8 (d-1) (1) (B) and it is distinct from "specifically indicates an [*5]intent to waive (IRC § 2207A (a) (2).
Several of the other cases cited by petitioner are also irrelevant, as they do not involve QTIP trusts and were decided based on different sections of the EPTL than is at issue here. 
The cases from other state jurisdictions, notably In re Estate of Miller (230 Ill.App.3d 141 [1992]) and Eisenbach v. Schneider (140 Wash. App. 641, 655 [2007]), are of course not binding but are also not persuasive.
In Miller the court made the point that section (B) (a) (2) of (IRC) 26 USCA 2207, applicable to tax apportionment involving a retained life estate, has a provision that requires specific reference to the Code provision in order to effectuate tax exoneration, so that if Congress had intended §2207A to read to require a reference to the Code in any clause of a will or trust that sought to exonerate the QTIP trusts from apportionment, it could have done so.
However, as of 2022, when Ann wrote her will, 26 USCA 2207A had been amended so that it reads exactly as 26 USCA 2207B (tax apportionment is waived when the document "specifically indicates an intent to waive any right of recovery under this subchapter with respect to such property" (IRC § 2207A [a] [2]; IRC § 2207B [a] [2]).
In Eisenbach v. Schneider (140 Wash. App. 641, 655 [2007]), the court found that failure to reference the QTIP trusts or the Code provisions in a clause apportioning the taxes on a pro rata basis did not constitute a waiver of the tax exoneration precisely because, the court noted, unlike in Kramer, the clause was not a "general pay-all-taxes" clause. In other words, the testators, husband and wife, had expressed a specific intent when they divvied up the tax obligation pro rata.
Of course, it is an axiom of estate and trust practice that will construction prioritizes the testator's intent (Matter of Fabbri, 2 NY2d 236 [1957]) and that the "primary objective in construing a will, of course, is to ascertain the decedent's intent so that the will's purpose may be effectuated (Matter of Colbert, 210 AD2d 616, 617 [3d Dept 1994], citing Matter of Carmer, 71 NY2d 781, 785 [1988]). "Intent should be discerned, if possible, from a reading of the will itself as an entirety" (Colbert at 617).
Here, however, federal law created the tax-planning entities known as QTIP trusts, and federal law has dictated the circumstances under which tax apportionment can be exercised or waived, a scheme New York adopted. When the federal and New York statutes require words of specific indication of intent and (in the case of the Code) a reference to the subchapter, "magic words" referencing the QTIP trusts and/or the Code provisions are exactly what is required.
Counsel for Respondent shall file a proposed Order.
Dated: March 24, 2025
Rochester, New York
Hon. Christopher S. Ciaccio
Surrogate's Court Judge

Footnotes

Footnote 1: Exactly how much the record does not state. Ann's children would still receive something, because collectively, they are one-third beneficiaries of the QTIP trusts. However, the $4 million tax, should it come out of the residuary estate (to which all of Ann's children are entitled) would likely be a large financial hit.